## OCTOBER TERM, 1885.

### Yates v. Hurd.

1. Possession of real estate open and exclusive is sufficient to put a purchaser upon inquiry, but it is the occupant's duty, when interrogated concerning his claim by one intending to purchase, to disclose the whole truth; if by misrepresentation or suppression of a material fact he misleads the other party, he is thereby estopped from afterwards asserting the claim or equity which he ought to have disclosed, as against the title of such purchaser.

2. To constitute an estoppel by election, the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another.

*Error to District Court of Clear Creek County.*

The facts are stated in the opinion.

Mr. R. S. Morrison, for plaintiff in error.

Mr. L. C. Rockwell and W. T. Hughes, for defendant in error.

HELM, J. Ejectment by defendant in error; contest over half of a certain lot in Georgetown. Both parties claim through one Smith, who is therefore a common source of title. Hurd holds by warranty deed from Smith. Yates relies upon possession and an unrecorded written agreement from Smith promising to sell. Yates was at the time of Hurd's purchase, and had been for three years prior thereto, in the visible and exclusive possession of the premises. This fact gives rise to the principal question in the case, viz.: Did such possession of Yates operate as a notice to Hurd, and thus render the latter's purchase subject to the former's equitable rights in the property?

We shall assume, without discussion, that these equities of Yates were such as to entitle him to a deed from Smith to the land in controversy. This assumption is probably correct, for, in the *first* place, the agreement was in writing, signed by Smith; and *secondly*, it had been executed on the part of Yates by payment of the purchase price. The general rule is "that open, notorious and exclusive possession of real estate, under an apparent claim of ownership, is notice to those who subsequently deal with the title of whatever interest the one in possession has in the fee, whether such interest be legal or equitable in its nature." Wade, Notice, § 273, and cases cited. But the theory upon which the foregoing doctrine rests is that such possession is sufficient to put the purchaser upon inquiry, and thus lead to a disclosure of the true state of the title. Resulting from this, as might be expected, is an equitable principle which forbids the occupant, when interrogated concerning his claim or rights, to deceive or mislead the would-be purchaser. It is the former's duty to disclose the whole truth, and if he does not do so, but, on the contrary, either expressly misrepresents the situation or tacitly suppresses a material fact, and thus misleads the latter, he suffers the consequences. Those consequences are

that he is estopped from afterwards asserting the claim or equity which he ought to have disclosed, but did not, as against the title of the purchaser whom he deceived or misled. "In cases involving the title to real estate, the doctrine of estoppel by conduct rests upon the broad principle of equity that one who encourages by representations, or even stands by and sanctions the acquisition of land by another, will be estopped to defeat the purchase by afterwards asserting title in himself." *Patterson v. Hitchcock*, 3 Colo. 533.

Before purchasing, Hurd made an effort to learn the nature of Yates' interest in the property. Concerning the result of this effort there is conflict of evidence. Hurd himself testifies that he examined the records of the town and county, and found nothing showing title or claim of title in Yates; that Smith, the vendor, told him Yates occupied under a verbal lease at $50 per annum; that upon inquiry Yates informed him "that he held the property by possession, and proposed to hold it in that way; that he had no notice or knowledge whatever of a writing between Yates and Smith until September, about two months subsequent to his purchase, when Yates, for the first time, disclosed the fact that he had a written contract of sale from Smith; that when, on the same day, he informed Smith of Yates' statement, the former declared that if Yates had anything of the kind it was a forgery, for he never gave him any paper except a receipt for rent. William J. Hurd, brother of defendant in error, testified that he first begun negotiations looking to the purchase of two lots, including the ground in controversy, for himself and defendant in error, the latter being absent at the time; that he searched the records and found nothing showing an interest in Yates; that Smith informed him that Yates held under a lease; that he approached Yates, and the latter said, as witness remembered, that he had a deed from Smith, or was to get one from the city; that he asked permission to see

the paper, but inspection was refused; that Yates said, "this is my property, and I will not show you the paper;" that negotiations for the purchase fell through, and he had nothing more to do with the matter; that he was not acting as agent for his brother, and was not prepared to state that he communicated to his brother his interview with Yates, but his impression was to the contrary.

On the other hand, Yates testified that William Hurd inquired about his title; that he told him he had a paper showing ownership; that William asked to see the paper; that he refused, but offered to show it to defendant in error; that two or three days afterwards he talked with the latter, and told him he owned the premises, and had the papers to show for them; that, upon request, he let Hurd copy the paper in his presence; that this was in June (Hurd's purchase being in July following); that after Hurd examined the paper he said it amounted to nothing, and he could beat him at law. Smith, testifying for Yates, said that at the time of sale to Hurd he told him he had given Yates the privilege of using the ground, and that he had leased, as he supposed, at $50 a year rent, but that there was a writing between him and Yates, the contents of which he did not know; that Hurd got a copy of this writing and showed it to him, and that he then said if Yates could construe the writing into a sale he might do so; that he signed the paper supposing it to be a lease; that about two weeks thereafter Hurd said he was satisfied that Yates had no title, and bought the property; that he told Yates, after signing the deed to Hurd, he (Yates) would have to get off the premises.

On behalf of Hurd, in rebuttal, W. T. Hughes, his attorney, testified that in the forepart of September, Smith, in his office, denounced the agreement between himself and Yates as a forgery. Two witnesses, Pratt and Eldridge, testified by deposition that on September 3d they were in Hurd's office, there being present, also, Hurd,

Smith and Yates; that Yates claimed that he had a contract with Smith for the property in dispute; that Hurd seemed very much surprised, and questioned Smith about it; that the latter denied the existence thereof; that Yates went out to get the paper, and during his absence Smith said if he had any such paper it was a forgery, as he had only rented the ground, and the only paper Yates could have was a receipt for rent; that Yates returned with the paper, and Smith, after inspection thereof, said he must have signed it thinking it a receipt for rent. Pratt testified that Hurd then copied the paper; Eldridge did not see him copy the paper.

Yates' own testimony shows that the Hurds informed him of their negotiations for the purchase of the premises at the time of their conversations with him in May and June.

From the foregoing evidence it appears beyond dispute that Hurd put forth all reasonable endeavors to discover the foundation of Yates' claim or interest. And, if Hurd's testimony is believed, he must, in law, take the title discharged of the secret equity existing in connection therewith; for at the date of purchase he had no actual knowledge of the unrecorded contract, and the declarations of Yates himself justified the conclusion that the latter relied solely upon his possession; while, according to Smith, Yates' occupancy rested exclusively upon a verbal lease or license.

The material question upon which most conflict exists in the testimony is, of course, as to when Hurd first became apprised of the existence of the contract between Yates and Smith. Upon this question the court below must have found with Hurd; and such finding is, we think, fully warranted. His statement that it was subsequent to the purchase is substantially corroborated by the testimony of Pratt and Eldridge, while Smith's declaration on the subject is further contradicted by Hughes; for if Smith had informed Hurd of the writing before

the purchase, as he conténds he did, he would hardly afterwards, in Hughes' office, have proclaimed it a forgery.

Yates appears to have been honest in his claim of ownership, and he was certainly injured by the transaction. But the fault is largely his own. He should have recorded his contract, or, having failed to do that, it was his duty, when questioned by one contemplating a purchase, to have fully and unreservedly disclosed the whole truth. This, according to the weight of evidence, he did not do. On the contrary, he seems to have regarded the inquiries of the Hurds as impertinent, and not entitled to serious consideration.

It is not necessary for us to pass upon the further proposition urged by the counsel for defendant in error, viz.: That "possession, taken or held by virtue of one right, is not notice of another right which the occupant acquires subsequently, unless it is attended by some change sufficiently visible and notorious to put purchasers on their guard."

Counsel for plaintiff in error urge strenuously but one other matter as constituting sufficient ground for a reversal. It appears that after the trial of this cause by the county court, decree therein in favor of Yates, and an appeal to the district court, Smith brought suit against Hurd upon certain promissory notes given as part payment of the purchase price for two lots, including the disputed ground. As a partial failure of consideration, Hurd pleaded the existence of this controversy concerning the title to the premises in question. He also pleaded the fact that a decree in favor of Yates had been entered herein by the county court. The court below sustained a demurrer to this branch of the defense, and Smith obtained his judgment for the full amount of the notes. This court, on appeal, afterwards affirmed that judgment. *Hurd v. Smith*, 5 Colo. 233.

Counsel assert that by entering that plea in the suit

upon the notes, Hurd became estopped from further prosecuting the case at bar. In support of their assertion they rely upon the doctrine of estoppel by *election* or *inconsistent positions*. This is a subdivision of the general subject of *estoppel in pais*. The latter has been defined to be "an indisputable admission, arising from circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced, by the voluntary and intelligent action of the party against whom it is alleged, to change his position." Bigelow, Estop. 345. With reference to the subject of election, Mr. Bigelow has this also to say:

"Whenever *the rights of other parties have intervened* by reason of a man's conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence, or even laches, was based upon a knowledge of the facts, he will be deemed to have made an effectual election, and will not be permitted to disturb the state of things, whatever may have been his rights at first." Id. 508.

The case relied on most strongly by counsel, and from which they have quoted most freely, is *Bailey v. Bailey*, 44 Pa. St. 274. Examination thereof shows that Mrs. Bailey asserted a right under a decree of divorce, and *upon the strength of that assertion recovered a judgment in replevin against her former husband*. The court held that she could not afterwards be permitted to reverse the decree of divorce, but the opinion clearly shows that it was not merely her plea of matter arising by virtue of the decree that produced the estoppel. Had the court in the replevin suit refused to recognize her right and ignored the decree, that action would probably not have influenced appellate proceedings in the divorce case.

A careful examination of the foregoing definitions, and of numerous illustrations, discloses the fact that, to constitute this sort of estoppel, the act of the party against whom the estoppel is sought must have gained some ad-

vantage for himself or produced some disadvantage to another; the person invoking the estoppel must have been induced "to change his position," or, by reason thereof, " the rights of other parties [must] have intervened."

It will be observed that in this regard estoppel by election, *i. e.*, by choosing between inconsistent courses of conduct, is very similar to estoppel by conduct, or equitable estoppel; for, to constitute the latter, the party complaining "must have been induced to act" by the representation or concealment of material facts. *Griffith v. Wright*, 6 Colo. 248. And this similarity is essential because the latter, like the former, is a branch of estoppel *in pais*. See Bigelow, Estop. And, as indicated by the general definition above given, the complaining party, whether the act be claimed to constitute an estoppel by election or an equitable estoppel, must have been led thereby to change his position. It may be remarked in passing that Mr. Herman, in his work on the Law of Estoppel, treats estoppel by election as a branch of the subject of equitable estoppels.

Applying these tests to the case at bar, it will be found that the principle of estoppel cannot be here invoked. Hurd's attempted defense of partial failure of consideration was no avail; it was solemnly and finally adjudged upon demurrer that the matters thus pleaded by him constituted no defense to the notes, and he was compelled to pay them in full. By this act he obtained no benefit or advantage; nor can it be said that by reason thereof the rights of third persons in any way intervened, or that Yates was thereby induced to change his position. The attitude and rights of all parties remained precisely the same as they were before the plea was interposed. Had that plea been successful, this case would have been more analogous to those cited by counsel, for it might then perhaps be said that, having secured an advantage by reliance upon the decree in favor of Yates, he should not afterwards be allowed to attack it. The opinion in *Smith*

*v. Hurd, supra,* shows that the court there did not view the decree of the county court in this action as final; for this cause, being still undetermined, is one of the reasons there assigned for holding the defense insufficient. And to accept the position now urged by counsel for plaintiff in error would be to tell Hurd, substantially: "You appealed from the decree in ejectment, therefore you shall not have any deduction from the purchase price of the land; but since you saw fit to plead that decree as a partial failure of consideration in the suit for such purchase price, you shall not be permitted to further prosecute your appeal; that is to say, you must pay your note though it was not negotiated, and you received no consideration for it;" a conclusion that hardly comports with advanced ideas on the subject of impartial justice. The judgment is affirmed.

*Affirmed.*