[No. 6547.]

## DAVIS v. PURSEL.

1. APPEAL—*Equity Cause—Review of the Evidence*—In an equity cause the court of review may examine the evidence heard below. If the decree is supported thereby and not inconsistent with controlling principles of law. it will not be disturbed even though the appellate court might have reached a different conclusion; otherwise if it is reasonably certain that the result below was palpably wrong.

2. ——*Presumptions*—And unless the contrary appears the court of review will presume that the court of first instance was controlled by a true conception of legal principles; and if the record exhibits a fair *quantum* of admissible and competent evidence, that its findings of fact were correct. And this is so as well as to those propositions which must be established by testimony excluding reasonable doubt, as to those where a mere preponderance suffices.

3. ——*Credibility of Witnesses—Weight of Evidence*—It is the trial court, not the court of review which determines the credit to be accorded to the witnesses, and the weight of the testimony.

4. ——*Brief in Reply—questions first suggested in the brief in reply* will not be considered, unless leave to thus initiate the new controversies is first obtained upon cause shown.

5. EVIDENCE—*Lost Deed*—The evidence examined and held sufficient to establish the execution and purport of a deed not produced, and alleged to have been lost.

6. ——*To Show That a Deed Absolute Was in Fact Intended as a Mortgage*—Documentary, parol, or circumstantial evidence, may be received to show that a deed absolute in terms is in fact a mortgage.

The evidence examined and held sufficient to establish a parol agreement that a certain trustee's deed of lands, should stand as a mortgage, redeemable by the grantee of the original grantor in trust.

7. ——*Discrediting Witness*—Under the statute (3 U. S. Comp. St. 3451 sec. 70) it is the duty of the bankrupt to include in his schedule,

lands which he has previously conveyed by a deed not of record. The fact that in such schedule he fails to mention the unrecorded deed is of little consequence as affecting the credit to be accorded to him, when afterwards called to depose to the execution of the unrecorded conveyance.

8. NOTICE—*Possession of Lands*—Actual possession of lands is constructive notice to the world of the right of the one in possession. A tenant's possession suffices. Where one having a mere option to purchase from the holder of the record title, is, before proceeding further, distinctly informed by the tenant of the right of the landlord under whom he holds, the doctrine of *Yates v. Hurd*, 8 Colo. 343 has no application.

9. TRUSTEE — *Parol Agreement Creating Trust* — Wall and Pursel executed a deed of trust of certain lands. Their title passed to the plaintiff. The premises were sold under deed of trust, Everett becoming the purchaser, previously agreeing with the plaintiff that the trustee's deed should stand as a mortgage for the original indebtedness, at an increased rate of interest. No time of redemption was specified. *Semble*, by this agreement Everett became trustee for the plaintiff.

*Appeal from Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

Messrs. ELLIOTT & BARDWELL, Mr. ELSON H. WHITNEY, Mr. J. C. HELM, for appellant.

Messrs. GOUDY & TWITCHELL, Mr. J. H. BURKHARDT, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

This action involves the ownership of certain real estate consisting of four lots, with buildings thereon, situate on Wazee street in the City of Denver. It was brought by Mary E. Pursel, as plaintiff, against Harry C. Davis and others, as defendants. Davis' claim of ownership is based upon a warranty deed dated April 2, 1907, from Mrs. Georgie A. Everett, who was the grantee of the premises in a trustee's deed upon the foreclosure of a deed of trust thereon, executed by David K. Wall and John T. Pursel, to secure to Michel C. Bouvier, or

order, the payment of their promissory note for the sum of $6,000. Plaintiff admits the execution of the deed of trust, the foreclosure thereof, and the trustee's deed to Mrs. Everett, and the execution and delivery by the latter of a warranty deed to Davis. She claims, however, that subsequent to the execution of the deed of trust she acquired title to the property, went into possession thereof, and made valuable and permanent improvements thereon; and that the foreclosure of the deed of trust was at her instance and request, under an agreement with Mrs. Everett that any title which the latter acquired thereby should be held and considered a mortgage, securing the payment by plaintiff of the indebtedness represented by the Bouvier note, together with an increased rate of interest thereon; and that Davis, at and prior to the time of his deed from Mrs. Everett, had full notice and knowledge of the rights and title of plaintiff in and to the premises.

Upon the material, controverted questions of fact the court submitted interrogatories to a jury, and the answers returned thereto were in favor of the plaintiff. Subsequently these findings were approved by the court and formed the basis of its decree in favor of plaintiff, from which defendant Davis prosecutes this appeal.

The court found, and the decree recites, substantially, that about November 1, 1894, David K. Wall and John T. Pursel owned the premises in question, at which time they signed and entered into a mutual agreement, in writing, that Wall should convey to Pursel, for a designated consideration, his interest therein, subject to all incumbrances thereon; that this agreement was thereafter, in writing, assigned by John T. Pursel, for a valuable consideration, to the plaintiff, Mary E. Pursel; that thereafter, on the 3d day of April, 1895, in pursuance of the aforesaid agreement, David K. Wall by a quit-claim deed conveyed his title and interest in and to the premises

to John T. Pursel; that on the same day John T. Pursel, in pursuance of the aforesaid assignment, conveyed the premises, by quit-claim deed, to Mary E. Pursel, subject to the hereinbefore designated deed of trust securing the Bouvier note; that Mary E. Pursel on that date entered into possession of the premises, and has at all times since remained in the possession and occupancy of the same by her tenants, as the owner thereof, and made, and caused to be made, valuable and permanent improvements thereon, and expended large sums of money in the payment of taxes upon the property, and interest upon the trust deed and mortgage indebtedness; that on the 30th day of November, 1903, the aforementioned deed of trust, securing the payment of the Bouvier note, was foreclosed and the property therein described was bid in or purchased by Georgie A. Everett, in pursuance of an agreement between her and the plaintiff that any title acquired through and under such sale, "should be held as and for a mortgage security for the payment by the plaintiff of the indebtedness" to Mrs. Everett for the principal sum of $6,000 secured by the deed of trust aforesaid, together with interest thereon; that Mrs. Everett at all times had knowledge of, and recognized plaintiff's ownership and possession of the premises in question; that the indebtedness, so secured, continued to exist, as before, and plaintiff continued to pay interest thereon to Mrs. Everett, to the date of the Davis deed, at an agreed increased rate per annum; that Mrs. Everett was never in possession of the premises, and the title and ownership thereof remained in the plaintiff, and was never conveyed to, or acquired by, Mrs. Everett; that Davis, at and prior to the time he purchased the property and premises, and received his warranty deed therefor, had notice of the rights and title of plaintiff in and to the premises, and was not a *bona fide* purchaser thereof without notice.

The aforesaid agreement between Wall and Pursel, together with the assignment thereof to plaintiff, and the quit-claim deed from Wall to Pursel, were offered and received in evidence, but the quit-claim deed from Pursel to plaintiff was not produced at the trial, the plaintiff claiming that it had been lost. None of these instruments were recorded.

The principle contention of plaintiff is, that the proven and admitted facts are insufficient to support the decree.

In this character of cases an appellate tribunal may examine the evidence to ascertain if the trial court had the right conception of the law, if its conclusions are supported by the evidence, or are fair deductions therefrom; and, if upon the whole case, it is reasonably certain that the decree is palpably unwarranted, though it may be slightly supported by the evidence, it should, nevertheless, be set aside. On the other hand, however, if the decree is supported by the evidence, under a proper conception of the law, it should not be disturbed, though the reviewing tribunal might have, if passing upon the matter in the first instance, reached a different conclusion.— *Perot v. Cooper,* 17 Colo. 80, 28 Pac. 391, 31 Am. St. 258; *Rust v. Strickland,* 21 Colo., 177, 179, 40 Pac. 350; *Jordan v. Greig,* 33 Colo. 360, 380, 80 Pac. 1045; *Rankin v. Cardillo,* 38 Colo. 216, 88 Pac. 170; *Heron v. Weston,* 44 Colo. 379, 383, 100 Pac. 1130; *Baird v. Baird,* 48 Colo. 506, 111 Pac. 79; *Fetta v. Vandevier,* 3 Colo. App. 419, 34 Pac. 168.

In equity the judgment is essentially a deduction as to what is just and true from the facts and circumstances proven in each particular case. It is, therefore, a question for the trial court as to the convincing effect of the evidence. When that tribunal enters a decree, and there is a fair *quantum* of admissible and proper evidence to support its conclusions, we must presume that it was

governed by proper rules of law, unless the contrary appears, that its findings are correct. This applies as well to those questions in a case which must be established by clear and convincing proof, beyond a reasonable doubt, as to those which may be established by a mere preponderance of the evidence. The principle of testing the weight of the evidence is no different upon one matter than upon another. In most trials presumptions arise at every step which have their effect, and are conclusive, unless overcome by proper evidence sufficient for that purpose. However, in almost every case of this character certain matters depend upon the existence or non-existence of extrinsic facts and circumstances resting in parol testimony. The establishment of those facts and circumstances to the satisfaction of the trial court, depend largely on the character of the witnesses, the consistency of their testimony and their manner and appearance on the witness stand. It is that court, not this, which must determine the credibility of the witnesses, pass upon the weight of their evidence and find the facts. We think this is the rule heretofore recognized and applied by this court.—*Whitsett v. Kershow,* 4 Colo. 419; *Townsend v. Peterson,* 12 Colo. 491, 21 Pac. 619; *Armor v. Spalding,* 14 Colo. 302, 23 Pac. 789; *Perot v. Cooper, supra; Davis v. Hopkins,* 18 Colo. 153, 32 Pac. 70; *Butsch v. Smith,* 40 Colo. 64, 90 Pac. 61; *Heron v. Weston, supra; Baird v. Baird, supra, Fetta v. Vandevier, supra.*

In *Perot v. Cooper, supra,* we reversed the decree because the trial court had clearly misconceived the law by determining the matter upon the presumption that, notwithstanding there was a substantial conflict in the evidence, a mere preponderance thereof was sufficient to transform a conveyance, absolute in form, into a mortgage security. It was also a misconception of the law that necessitated a reversal in *Fetta v. Vandevier, supra,* where the only evidence of the nature and character

which courts hold essential to justify the decree entered, came from the mouth of a witness disqualified under the statute to testify in the case. In *Butsch v. Smith, supra,* while doubt was expressed as to the sufficiency of the evidence, the decree was not set aside for that reason, but rather because it appeared that the trial court misconceived the law of the case, by refusing to admit and consider material evidence under the issues made, and which might have caused a different conclusion, had it been received and considered. In *Baird v. Baird, supra,* the decree was entirely unsupported by the proofs. Upon the material issues there was no substantial conflict in the evidence, and, viewed in its most favorable light, and upon the assumption of its truth, the conclusions to support the decree could not be deduced therefrom. In the other cases cited the decree of the trial court was upheld.

Guided by these rules, let us now consider the claim here made of the insufficiency of the evidence to support the decree. It is said that it fails to show any title whatever to the premises in plaintiff. We do not so read the evidence. On the contrary, it conclusively shows that on April 3, 1895, the premises were, by quit-claim deed, conveyed to the plaintiff by John T. Pursel for a valuable consideration. Both the grantor and grantee therein testified that the particular deed once existed; that it was drawn by the same lawyer, and acknowledged before the same notary public, at the same time and place as the like deed from Wall to Pursel; and was the same in form, except as to the names of the respective grantors and grantees, and the description of the property conveyed; that it was delivered to the grantee, the plaintiff herein, for a valuable consideration, whereupon she went into possession of the premises as the owner thereof, and thereafter exercised exclusive ownership over the same. This testimony was in no wise contradicted, and was, of itself, sufficient to warrant the finding of the court. The

fact that certain alleged conversations of these two wit-
nesses with another witness, relative to this deed, were
denied by the latter, did not destroy the evidence of the
former or necessarily render it unworthy of belief. Its
credibiltiy and weight, under all the facts and circum-
stances of the case, were for the jury and trial court to
determine.

Moreover, numerous facts and circumstances in evi-
dence strongly corroborate the testimony of these wit-
nesses, that the deed actually existed as claimed by plain-
tiff. Conversations taking place in the fall of 1895, be-
tween Mrs. Everett and the Pursels, relative to the former
taking over the loan represented by the Bouvier note,
were detailed in evidence; and the letters of Mrs. Everett
to the Pursels, early in 1896, show that the transaction
was consummated. In these letters Mrs. Everett sug-
gests that, as the property stands in Mrs. Pursel's name,
it might be necessary to have her also sign the papers,
but leaves the matter entirely to the judgment of Mr. Pur-
sel. Furthermore, at the date of plaintiff's deed the
Deering Harvester Company was occupying the premises
as tenant, and, according to the manager thereof, was
notified that Mrs. Pursel had acquired title thereto, and
thereafter recognized her as such owner, paying her the
rent reserved, until October 1, 1895, when it vacated the
premises. Thereupon, the Pursel Carriage Company, a
corporation, took possession, reciting in its minutes that
it had leased the premises from Mary E. Pursel; and it
thereafter retained the open notorious possession of the
same as her tenant, and at all times recognized her as the
owner of the property. Besides, another disinterested
witness testified that she had seen a quit-claim deed,
among other papers, from John T. Pursel to Mary E.
Pursel in the very box wherein the Pursels testified that
the deed in question was kept. While it does not appear
that this witness identified the deed she saw as the deed

in question, or knew its contents, her testimony is cer-- tainly corroborative of the other evidence on the subject.

Furthermore, we think the assignment to plaintiff of the Wall contract, to convey to John T. Pursel the prem- ises, constituted the latter, who was the grantee in Wall's deed subsequently made, a trustee for plaintiff. There- fore, with or without a deed from John T. Pursel, the plaintiff's equitable rights in the premises were complete. Surely, under such circumstances, the testimony of the party who had in writing agreed, in effect, to convey, coupled with the testimony of the party to whom the conveyance was to be made, that such conveyance was made, is sufficient to establish that fact when the same is in no wise contradicted. We are satisfied from the whole record, that the plaintiff discharged the burden resting upon her to establish, by clear and satisfactory proof, that the deed in question once existed; what its contents were in all substantial parts; that it had been lost, and though diligent search had been made, it could not be found. This was all that was necessary upon this feature of the case.—*McDonald v. Thompson*, 16 Colo. 13, 26 Pac. 146.

It is further claimed that there is not sufficient evi- dence to establish the fact that the trustee's deed convey- ing the premises to Mrs. Everett, is, in fact, a mortgage. That deed is absolute in form, and must, therefore, stand as the ascertained intention of the parties, and be so en- forced, unless it is shown by clear, positive and convinc- ing evidence that the mutual intention of the parties there- to was other than as therein expressed. Nevertheless, admissible evidence of any kind, whether documentary, circumstantial, or from the mouths of credible witnesses, may be sufficient for that purpose.—§ 280, Code Civil Pro- cedure, 1908, *Butsch v. Smith, supra*.

Applying this rule we think the finding that the deed in question is, in fact, a mortgage, was not improperly

made, and must, therefore, be sustained. Defendant concedes that both Mary E. and John T. Pursel testified, substantially, that it was agreed between themselves and Mrs. Everett that any title to the premises, subsequently acquired by the latter, upon the foreclosure of the deed of trust, which was by their mutual agreement presently to be made, should be held as security for the indebtedness of $6,000 represented by the Bouvier note, together with interest thereon, payable monthly, until such time as Mrs. Pursel could pay the debt. Moreover, the testimony of these witnesses is corroborated, in its essential parts, by the letters of Mrs. Everett, the testimony of other witnesses, and facts and circumstances in the case, and legitimate inference drawn therefrom.

Furthermore, on October 20, 1903, Mrs. Everett was a party to a written agreement with John T. Pursel and the plaintiff herein, in which these lots were described and referred to as belonging to the plaintiff, and in which Mrs. Everett obligated herself to hold the $6,000 indebtedness, secured by such real estate, until Mrs. Pursel could make payment thereof. Besides, in numerous letters she acknowledged the receipt of monthly remittances in response to letters transmitting the same, wherein the payments were referred to as interest. These remittances were made both before and after the foreclosure of the deed of trust, the checks or drafts therefor drawn, and sometimes transmitted by the bookkeeper of the Pursel Carriage Company, and were always the exact amount of the total of the monthly interest on this loan and another held by Mrs. Everett against Mrs. Pursel. While the receipts for taxes upon the property were in the name of Mrs. Everett, the evidence conclusively shows that, before and after the foreclosure of the deed of trust, it was Mrs. Pursel's money with which the taxes were paid. For years prior to the negotiations of defendant for this property, the

closest friendship, social and business relations existed between the Pursels and Mrs. Everett. Mr. Pursel had acted as guardian of Mrs. Everett's son, and assisted in closing up her husband's estate, for which she was the administratrix. During all these years, as disclosed by Mrs. Everett's many letters, she kept the Pursels advised of the slightest details in her business affairs and transactions, of the property she thought of purchasing or selling, and of the loans she contemplated making. Notwithstanding these intimate relations, and her prior custom, she in no wise apprised the Pursels as to the transaction with defendant, though she wrote them after the date of the option to defendant, and prior to the execution of the deed conveying the premises to him.

There is nothing in the record to indicate that the trial court had any erroneous view of the law or of the character and *quantum* of evidence necessary to prove the fact in question, and there being substantial and competent evidence from which such conclusions might reasonably be drawn, we must presume that the evidence measured up to the required standard and convinced the court on this matter beyond a reasonable doubt.

Neither are we impressed with the claim that the evidence is insufficient to support the court's finding that the defendant, at and prior to the time he purchased the property and received his deed therefor, had actual and constructive notice of plaintiff's rights and title in and to said premises, and was not a *bona fide* purchaser thereof. The evidence is that defendant had been for years familiar with the particular block in which these lots were situate; that the lots were worth approximately $25,000.00; that defendant owned premises immediately across the street therefrom; that he was in the habit of making frequent visits thereto during several years prior to the date of his alleged purchase; that he knew that the Pursel Carriage Company was contin-

uously occupying and carrying on its business, in the premises in controversy, and maintained a conspicuous sign across the front and side of the building bearing its name, and the nature of its business. It further appears that in the year 1906 defendant sought to induce the property owners in the block where this property was situate to pave Wazes street, and for that purpose visited the Pursel Carriage Company, then occupying these premises as the tenant of Mrs. Pursel, and had a conversation relative thereto with its manager, John T. Pursel. According to the testimony of a Mr. Killen, who was in no wise interested in the case, and also that of John T. Pursel, the latter then and there told the defendant that Mrs. Pursel was not at that time financially able to bear her proportionate cost of the expense of paving. Defendant concedes that, at this time, he was not acquainted with Mrs. Everett, and had no knowledge that she held the recorded title to the premises or claimed any interest therein; that subsequently he heard that the recorded title was in Mrs. Everett, and that she resided in California; that approximately a year after his conversation with Mr. Pursel relative to the paving of the street, and while on a visit in California, on March 4, 1907, he concluded he would interest Mrs. Everett in the paving proposition; that thereupon he called upon her, but was unable to secure her consent to the paving of the street but was importuned by her to purchase the property, and, after some negotiations, reached an agreement whereby, on March 6th, for a consideration of $10.00, he received from her an option for a period of two months, to purchase the premises for $8,000, one half cash and the balance on or before three years thereafter; that subsequently he returned to Denver, and prior to taking up the option and receiving his deed, called upon the Pursel Carriage Company in possession of the property, and told Mr. Pursel that he had

purchased the premises from Mrs. Everett and had called to see about the rents. The further substance of the conversation, then taking place, is in dispute. Mr. Pursel, however, testified that he thereupon exclaimed: "How could Mrs. Everett deed away my wife's property? I won't talk to you any further;" and thereupon, without further conversation, the defendant departed from the premises. A disinterested witness testified to seeing the defendant approach Pursel, the two step aside where they held a brief conversation, the defendant depart, and the immediate return of Pursel into the office in an agitated and excited condition. Defendant had, in fact, only an escrow agreement to purchase the property at the time of this conversation, and testified that he did not visit the premises and the place of business of the Pursel Carriage Company for the purpose of inquiring into the rights of the occupant of the premises, and did not make, or intend to make, an investigation of that character. He made no inquiry whatever with respect to the rights of either the corporate entity then in actual possession of the property, or Mrs. Pursel, the equitable owner thereof.

The rule announced in *Yates v. Hurd*, 8 Colo. 343, 78 Pac. 535, relied upon by defendant, is not in point in his favor under the facts of this case. Neither the actual occupant of the premises, the owner thereof, nor her agent, in any sense deceived or misled the would-be-purchaser. On the contrary, the language of Mr. Pursel, when informed by defendant that he had purchased the property, was a declaration of ownership of the premises in Mrs. Pursel. Under these facts and circumstances the general rule applies, as stated in *Yates v. Hurd, supra,* that possession of real estate, open and exclusive, is sufficient to put a would-be-purchaser upon inquiry, and constitutes notice of the interest the one in possession has in the fee, whether legal or equitable in

its nature. It is well established "that actual notice embraces all degrees and grades of evidence, from the most direct and positive proof, to the slightest circumstances from which a jury would be warranted in inferring notice, while constructive notice is a legal inference from established facts, and, like other legal presumptions, does not admit of dispute."—*Simmons C. C. Co. v. Doran*, 142 U. S. 417, 438, 12 S. C. 239, 35 L. Ed. 1063.

And in *Thomas v. Burnett*, 128 Ill. 37, 43, 21 N. E. 352, 42 R. A. 222, it is said: "It is well settled that actual possession of land by a party under an unrecorded deed, is constructive notice of the legal and equitable right of the party in possession. The possession by a tenant is the same, in all respects, as if by the party himself. * * * The tenant's possession of land is that of his landlord. * * * Actual residence is not essential to continuous possession. If the party is in actual possession of the land, and there are continuous acts of ownership, it is sufficient."

Defendant seeks to apply what he claims is the well known principle, that possession retained by the mortgagor, his agent or lessee, after foreclosure sale and issue of an absolute deed, does not constitute notice of an adverse interest contrary to the latter deed. In seeking to apply the alleged rule he assumes a false premise. Mrs. Pursel was neither the mortgagor, nor a party to the foreclosure proceedings, nor is defendant claiming title through a conveyance made by her. Moreover, while her title was originally derived from one of the grantors in the mortgage deed subsequently foreclosed, it might be said she acquired, and held an equitable interest in the premises arising by virtue of the agreement with the purchaser at such sale, constituting the latter a trustee for the former. But be that as it may, the evidence was sufficient to support the finding of the jury, and the con-

clusions arrived at by the trial court, that defendant, at and prior to the time he made his purchase of and received his deed for the premises, had actual notice of plaintiff's rights and equities therein and was not a *bona fide* purchaser thereof.

As the question of actual notice to defendant of the rights of plaintiff in and to the premises depend largely upon the testimony of John T. Pursel, it is claimed that his testimony is unworthy of belief. This claim is based upon the fact that subsequent to the conveyance of the premises by him to Mrs. Pursel, he was adjudged a bankrupt and included the property in question in his schedule in the bankruptcy proceedings. It was the duty of the bankrupt to include in his schedule all of the property "which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.".— Act July 1, 1898, c. 541, § 70, 30 Stat. 565, U. S. Compiled Stats. 1901, p. 3451.

The unrecorded deed to Mrs. Pursel did not pass title to the property as against attaching or execution creditors of Pursel, and under the express terms of the statute, *supra,* the title to this property passed to the trustee in bankruptcy, subject only to the equities or claims of record against it. The fact that he did not disclose therein that Mrs. Pursel held title to the property by an unrecorded deed, or that Mrs. Pursel did not intervene in the proceedings in bankruptcy and set forth her own title, is of slight consequence. With or without such acts the rights of all parties concerned remained the same. Moreover, if the claim of ownership in the schedule was inconsistent with witness' testimony in this case, it only affected his credibility and the weight to be given his testimony, and its consideration here in that respect was necessarily foreclosed by the findings and decree entered by the trial court.

Many matters discussed we deem unnecessary to consider. Some were never presented to the trial court, and are first mentioned here in plaintiff's reply brief. An appellate court will not consider a question raised for the first time in the reply brief, except leave of the court is first had and obtained and upon good cause shown.— *Isabella G. M. Co. v. Glenn,* 37 Colo. 165, 86 Pac. 349.

Adhering to the rule that the trial judge must act upon the convictions of his own judgment and conscience, and that it is his province ultimately, in cases of this kind, to pass upon the weight of the evidence, the credibility of the witnesses, and to find the facts, we would not be warranted in disturbing the decree entered. The judgment is, therefore, affirmed.

Decision *en banc.*

Mr. JUSTICE SCOTT not participating.