[No. 7589.]

HAWKINS v. ELSTON ET AL.

1. PLEADINGS. *Special Demurrer*, not containing the specification of causes required by the code (Sec. 57), will be treated as a general demurrer. (406)

2. TENDER. *When Must be Pleaded.* The complaint alleging that defendant, holding the legal title to lands, in fact as security for money, had repudiated the trust and asserted absolute title, praying an account, and a decree for a conveyance, upon payment of whatever might appear to be due, *semble* it need not allege a tender or offer to pay. (408)

3. PLEADINGS. *Construed.* The complaint alleging that Wood, holding the legal title to certain lands as security for money, had conveyed them to defendant, without consideration, and with directions to sell the land and pay plaintiffs' ancestor one-third of the moneys due Wood, that defendant had long been in possession receiving the rents and profits, which exceeded the interest on the mortgage

indebtedness and his outgoes for taxes and the like, prayed an account of the profits of the lands, and that they be permitted to pay defendant the balance of the mortgage indebtedness, and have title to the premises vested in them, *Held* to disclose an offer to pay defendant whatever should be found due him upon the account.   (407)

4.  APPEAL AND ERROR.  *Harmless Error.*  Error in refusing to strike out immaterial matter, not prejudicial to the moving party, is harmless.   (408)

5.  STATUTES.  *Foreign*, have no effect upon transactions relating solely to lands situate in Colorado.   (408)

6.  MORTGAGE.  *Deed Absolute for Securing Money*, is a mortgage. The grantee has a lien, but no estate.   (408)

7.  ——*Surrender of Possession by Mortgagor*, to mortgagee does not of itself, extinguish the mortgagor's estate, or the mortgage debt.   (408)

8.  LIMITATIONS.  *Color of Title—Good Faith.*  One asserting a false claim of title under an absolute deed, in fact given as security, will not be heard to plead the seven years' statute of limitations (Rev. Stat. Sec. 4089, 4090).   (408, 410)

9.  EQUITY.  *Laches.*  Lands were held by title absolute, but in fact as security for money.  Possession was delivered to the mortgagee, and for many years he received the rents and profits, not as his own, but for the mortgagor.  The mortgage debt was never denied.  *Held* that the mere lapse of time, the relations continuing, and being admitted, affected the rights of neither party.   (409)

10.  MORTGAGE.  *Deed Absolute, as Security.*  Hall exchanged lands in Colorado with Elston, for properties in Missouri, which were encumbered to Wood; and at Elston's instance, Wood consenting, the lands in Colorado were conveyed to Wood, who thereupon executed a lease to Elston, with a covenant to convey, upon the payment of the moneys owing by Elston.  *Held*, in effect, a mortgage of the lands in Colorado by Elston to Wood.   (414, 415)

11.  ——*Absolute Deed*, with or without a contemporaneous agreement of sale, is presumed to be, in fact, what it appears to be.  He who asserts that it was intended as a mortgage must show by clear and convincing evidence that this was the intention.   (416)

12.  APPEAL AND ERROR.  *Presumptions.*  In the court of review the presumption, in the first instance, is, that the decree of the court below is correct.   (413)

13.  ——*A Decree Fairly Supported by the Evidence*, and in har-

mony with a true conception of the law, should not be disturbed, even though the court of review might have reached a different conclusion. (412, 413)

14. PLEADINGS. *Amendments.* Complaint seeking to charge certain lands with a trust. It appearing that the defendant had exchanged portions of the lands for others, receiving boot money, *Held* proper to allow an amendment praying the imposition of the trust upon the lands received in the exchange, and that defendants account for the moneys received in the exchange. (417)

15. TRUSTS. *Following Trust Property.* Equity permits the beneficiary to follow the trust property into new investments. (417)

16. MORTGAGE. *Assignment.* Wood, holding the legal title to lands as security for money, conveyed them, without consideration, to Hawkins, instructing him to collect the mortgage indebtedness by sale of the land, compensate himself for his trouble, and pay one-third of the residue of the mortgage money to each of persons named. *Held* an assignment of the mortgage debt. (418)

17. APPEAL AND ERROR. *Judgment.* Wood holding title to lands by absolute deed intended as a security for money, conveyed to Hawkins, without consideration, and with directions to collect the moneys due, by sale of the lands, and distribute the moneys, paying one-third to Elston. In an action by the heirs of Elston to enforce the trust under which Hawkins had received the title, the court below decreed in favor of plaintiffs, but failed to find the amount of the mortgage debt, or whether the transaction by which Hawkins received the title constituted a gift to Elston. The decree was reversed with directions to the court below to find as to the alleged gift, ascertain the amount due on the mortgage, and enter a decree vesting the title in plaintiffs, upon payment within a reasonable time of the amount found due, with interest from the date of entry, and to allow defendant to amend his pleadings so as to pray foreclosure, in default of payment of the mortgage debt. (418, 419)

18. ——*Costs.* Inasmuch as the plaintiffs stood in the attitude of a mortgage debtor seeking redemption, but the greater amount of the costs had been occasioned by the wrongful conduct of the defendant, it was directed that neither party should recover costs, in the court of first instance, or the court of review. (419)

19. PARTIES. *Heirs Suing Upon Gift to Ancestor.* Wood held title to lands as security for money owing him by Elston, and conveyed the lands to Hawkins, without consideration, and with directions to collect the amount due him, by sale of the lands and pay one-third thereof to Elston. Hawkins still holding the title Wood died and his estate was settled. Elston's heirs were allowed to maintain an action upon this transaction, in their own names.

*Error to Las Animas District Court.*—Hon. HENRY HUNTER, Judge.

Messrs. McGLASHAN & Gow, for plaintiff in error.

Mr. JOHN G. PAXTON, Messrs. McCHESNEY & Mc-CHESNEY and Messrs. NORTHCUTT & McHENDRIE, for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The questions here involved grow out of transactions among members of the same family. John W. Elston, under whom the defendants in error claim by inheritance, and Canby Hawkins, the plaintiff in error, who was sole defendant in the trial court, were half brothers, having the same mother. John W. Wood was their step-father, and participated in the raising of both. After his wife's death he made his home, first, with one and then another of his step-children, with whom the most intimate family relations existed. Other allegations of the complaint are that Elston, in 1894, being the owner of certain real estate in Kansas City, Missouri, some of which stood upon the records in the name of Wood, to secure him for a loan, negotiated a trade thereof to one Hall for a ranch situated in Las Animas County, in this state. In consummating the deal, by mutual agreement between Wood and Elston, $11,000 of the indebtedness which Elston owed Wood, secured by the Kansas City property, was transferred to the Colorado ranch. This was consummated by rearranging some of the loans on the Kansas City property, the conveyance of the latter to Elston, and by him and his wife to Hall, subject to the readjusted loans aforesaid, and the joint conveyance, free of incumbrance, by Wood,

Elston and his wife to Hall of other of such property held by Wood as security as aforesaid; and the conveyance by Hall by deed, absolute in form, of the ranch to Wood to secure him in the payment of the $11,000 loan; and in conformity with a custom he had adopted and followed for many years in loaning money, when taking title absolute in himself, but, in fact as security, Wood, as a part of the same transaction, gave Elston a lease covering the ranch, stipulated therein that the lessee should pay the taxes, special assessments, and for repairs and improvements on the ranch, and a certain annual rental, which, in the case at bar, was equivalent to six per cent. interest on the loan, and containing a clause that the grantor would convey the premises to the lessee within the term of the lease upon payment of the $11,000. It is further alleged that Elston thereupon took personal charge of the ranch; that he was a practicing physician, inexperienced in ranching, and was unfortunate in such business venture, and defaulted in the payment of interest and taxes; that thereupon Wood sent Hawkins, who was an experienced farmer and business man, to the ranch to investigate and ascertain the cause of Elston's financial embarrassment; that in the year 1897, Wood, being old and in feeble health, upon the representation of Hawkins, that in order to manage the ranch successfully he should have the power of sale necessary to dispose of the same and collect the amount of the loan, conveyed, by quit-claim deed, the ranch to Hawkins for an alleged consideration of $1.00, but in fact, without any consideration whatever, with full knowledge on the part of Hawkins of the rights and equities of Elston in the premises; that simultaneously with the execution and delivery of such conveyance to Hawkins, Wood instructed him to collect the amount of the mortgage indebtedness by the sale of the ranch, and, after compensating himself for

his services, to pay one-third thereof to the defendants in error herein, one-third to a brother of John Elston, and one-third to Wood. That thereafter Hawkins assisted Elston in the management of the ranch until the latter's death in October, 1900, and subsequent thereto has had the sole management thereof; that in January, 1908, Hawkins repudiated the trust and denied the rights of plaintiffs in the premises; that Wood died in September, 1905, and his estate has been duly administered and final settlement made; that the rental of said ranch, since the conveyance to Hawkins, has exceeded the interest on the loan and the charges, taxes and assessments on the ranch.

The prayer of the complaint is, substantially, that the sum Hawkins was instructed to pay the plaintiffs upon the collection of the mortgage indebtedness be decreed a credit thereon; that Hawkins account for the profits of the ranch, and the plaintiffs be permitted to pay to Hawkins the balance of the mortgage indebtedness, and have title to the premises vested in them.

The defendant, after unsuccessfully attacking the complaint by demurrer and motion to strike, filed an answer in which he denied the existence of the mortgage loan, and the facts as to the gift aforesaid; alleged an absolute conveyance of the ranch for value from Hall to Wood, and from the latter, by gift, to himself, without notice of the rights of plaintiffs. There was also interposed as defenses the statute of frauds of Missouri, and those of limitation of this state, the laches and estoppel of the plaintiffs, and the voluntary surrender of the premises by Elston, together with the payment by defendant of taxes for seven successive years under possession, and color of title and claim of ownership made in good faith. An alleged debt of Elston to Hawkins was pleaded as a counter-claim to which a demurrer was in-

terposed and sustained. The answer and evidence having disclosed that Hawkins in 1903 sold and exchanged for other lands and a certain cash payment, to an innocent purchaser, small portions of the ranch in question, and it appearing that such lands so received by the said Hawkins were held by him and adjoined the balance of said estate, and, as enclosed, constituted a part thereof, the plaintiffs were permitted to, and did, amend their complaint to impress their equities thereon, and for judgment against the defendant for the cash payment he had received in such exchange, with interest. Trial was had and the issues found in favor of the plaintiffs. The decree cancelled and annulled the deed from Wood to Hawkins, which had been asked in the prayer of the amendment to the complaint, and adjudged the plaintiffs owners in fee of the ranch, including that received in exchange as aforesaid, subject, however, to whatever might appear to be due on the aforesaid loan, (without finding the amount), and gave judgment for plaintiffs for the cash received by defendant on the exchange of lands aforesaid.

1.—The overruling of the demurrer to the complaint and the denying of the motion to strike portions thereof, and the sustaining of the demurrer to the cross-complaint, were not prejudicial to the defendant. (a)—The demurrer to the complaint, though purporting to set forth five grounds, was, by its omission of essential specifications required by the Code in that regard, in legal effect, only a general demurrer upon the ground of insufficiency of facts stated to constitute a cause of action. While we do not commend the complaint as a model of good pleading, nevertheless, as against a general demurrer, we think it sufficient. The pleading of an actual tender or offer to pay the amount due under the mortgage would probably not be a condition precedent

to the maintenance of plaintiff's cause of action under the facts of this case. The complaint alleged that defendant had repudiated the trust and was claiming the ownership and right to possession of the property worth $25,000, held only as security for the payment of less than half that sum. It thereby, coupled with its other allegations, clearly set forth sufficient facts to impel the court to construe the contract, and declare the true relation of the parties in the premises.—*Reitz v. Humphreys,* 53 Colo. 177, 184, 185, 125 Pac. 518. However, we think the complaint, when fairly considered, discloses an offer on the part of plaintiffs to pay the mortgage indebtedness when the amount thereof should be ascertained and determined. It contains facts showing the existence of the debt from Elston to Wood, the furnishing by the former of the sole consideration for the ranch, its conveyance to Wood by deed absolute in form, and the giving of the lease as a part of the transaction in accordance with a plan mutually agreed upon between Wood and Elston to secure the debt aforesaid, and to reinvest Elston with title to the ranch upon payment of the debt, and prayed that such matters be so determined and decreed and plaintiffs be permitted to redeem the ranch from the mortgage lien and have title thereto invested in themselves. (b)—Defendant's motion to strike portions of the complaint should, perhaps, have been sustained as to the matters designated therein under the heading "First" and "Second." The former sought to eliminate certain allegations as to the personal characteristics of Wood, his aversion to the payment of taxes, his business and custom as a money lender in making and securing loans: while the latter sought to eliminate the conclusion that by virtue of certain things a resulting trust arose. However, the question need not be determined herein. For, under the circumstances of this

case, as disclosed by the record, no possible injury resulted to the defendant by the action of the court in the premises. (c)—The demurrer to the cross-complaint was properly sustained. The alleged cause of action was a debt of Elston's to Hawkins arising from a transaction in no wise connected with the mortgage indebtedness or the land in question, nor had it been proved and established as a valid claim against Elston's estate as required by statute.

2.—The statute of Missouri pleaded as a defense has no application. The facts of the case must be considered in the light of the laws of this state, and the rights of the parties in and to the premises determined thereunder. Neither do the statutes of limitation of this state, nor the alleged laches and estoppel of plaintiffs, affect their rights or prevent them from maintaining this suit. A deed, although absolute on its face when given as security only, is a mortgage, and the mortgagee therein has a lien on, but no estate in, the premises. As defendant stands in the shoes of Wood, with no rights except by way of gift, and taking with actual and full knowledge of the existence of the mortgage and the rights of the mortgagor in the premises, the case is in principle the same as if Wood were living and the sole defendant herein. Moreover, under such facts, possession and payment of taxes for seven successive years can avail defendant nothing. If the instrument of conveyance under which he holds constitutes color of title, nevertheless, claim of ownership could in no wise be made in good faith. The birthmark of a mortgage—the existence of a debt—was impressed upon the transaction at the time of its inception, and even the surrender of the possession by the mortgagor to the mortgagee, before or after the debt became due, does not of itself alone convey the mortgagor's estate in the land or extinguish the debt

and security.  They continue as before, and while time
may extinguish the right to collect the debt at law, the
debt and lien, nevertheless, exist.  But here the lapse
of time had in no wise affected the rights of either party.
The remedy of each was reciprocal, and under the cir-
cumstances of this case equity affords a remedy to all
of the parties concerned.  There had been no denial of
the debt by plaintiffs or by their predecessor in interest,
the original debtor.  On the contrary, the existence of
the debt was at all times conceded, payment thereof con-
templated, and the rents and profits of the premises
received by the mortgagee under an arrangement fairly
deducible from the evidence that it should be received
by him, not as his own, but as that of the mortgagor.
Prior to the quit-claim deed from Wood to Hawkins the
latter talked with plaintiff, Sallie G. Elston, relative
to the delay of her husband in sending "the interest on
the $11,000 owed by" him to Mr. Wood.  And thereafter,
immediately subsequent to the death of Elston, Hawkins
talked with Mrs. Elston about her equity in the ranch, at
which time she told him that she had "her hands full
with the children, and would leave the matter of work-
ing" her equity out in his hands, which was clearly un-
derstood should be accomplished through a sale of the
premises.  Indeed, in the same conversation Hawkins
stated that he had tried to sell the ranch, and that Mrs.
Elston's husband "had been advertising the ranch all
the time up to his death in Denver, Chicago, Kansas City
and Trinidad papers."  This arrangement continued
without question or suggestion of repudiation by either
of the parties until the spring of 1908, a short time be-
fore the institution of this suit.  Indeed, under date of
February 14, 1908, Hawkins, in his letters in evidence,
substantially concedes this fact.  In one he said:  "I
don't think any one could take it (the ranch), with

$11,000 on it and pay it out." Therein he also refers to his efforts to sell the ranch and suggests that Mrs. Elston sell it, or that she buy out his interest therein, or, if she would set a price on her interest, "give or take," the two could "trade." As long as such relations and understanding existed between the parties, no cause of action accrued, and the statutes of limitation neither barred a foreclosure nor a redemption from the mortgage deed.

While the surrender of possession of the premises by a mortgagor to a mortgagee where the mortgage was created by deed absolute in form, may frequently be an important factor in determining whether the equity of redemption has been given up by the mortgagor, we think little significance is to be ascribed to such act under the facts in this case. It is conceded that both Wood and defendant became convinced that the ranch was worth less than the $11,000 against it, and had frequently so advised both Elston and his wife. All parties recognized and conceded Hawkins' superior business ability, and it was believed that he could handle the ranch and dispose of it to better advantage than could Elston. Moreover, it is a legitimate deduction that it was within Elston's knowledge, as it certainly was that of the others, that Wood, believing that the ranch was worth no more than the encumbrance thereon, had set aside or attempted so to do by gift, one-third of such encumbrance for the benefit of the plaintiffs herein when the same was collected by a sale of the premises: While Elston thought the ranch far more valuable than did either Wood or Hawkins, he was, nevertheless, anxious to sell it, pay the indebtedness and receive his equity, whatever it might be. Under these circumstances, it is clear there was no intention upon Elston's part to abandon or disclaim his right to redeem, but rather to facilitate his own interests by a hoped-for quick sale through Hawkins, and the sur-

render of possession of the premises was for no other purpose and was so understood by all the parties. Otherwise, why did Elston thereafter continue in his endeavor to sell the ranch? Nor do we think the reference by Mrs. Elston, in a letter to Hawkins, to the "third value of the ranch," which she therein stated Wood provided in his agreement should be hers, coupled with the request that Hawkins presently advance the same to her, constitutes an admission, as claimed by defendant, that she had no rights in the premises as a mortgagor. This is clear from other portions of the same letter. She therein states that "I am asking only for that which is doubly my own, both by right of the property which my husband put into the ranch, and by the expressed will of him who owned the incumbrance upon it, and who put it into your hands as a trust to wind up and distribute." Indeed, we think referring to her interest in the ranch as one-third of the value thereof when seeking to secure it as she was from Hawkins before sale of the ranch, was quite natural and in no wise inconsistent with her position herein. She knew that her husband, up to the time of his death, had endeavored to sell the ranch, that Hawkins had exerted his efforts continuously to the same end and had long entertained, as did Wood, the belief that the ranch was worth no more than the incumbrance thereon; and, having in mind the gift or attempted gift to her by Wood of one-third of the mortgage indebtedness, whatever it might be when collected, she finally concluded, hard pressed as her letter discloses she was to support herself and children, to close the matter and presently possess the gift. Had Hawkins accepted her suggestion and turned over to her the alleged gift, an entirely different question would have arisen than that involved herein. But this he did not do and what she said in that letter is in no wise controlling in view of the other facts of the case.

3.—The lease to Elston was executed a few days after the date of the deed to Wood, and it is therefrom contended that the transaction constituted a conditional sale, and can not be shown to be, in fact, a mortgage. We think otherwise. The dates of the delivery of the several instruments are not disclosed but it does appear that the conveyance of the ranch from Hall to Wood and the making of the lease from Wood to Elston were part and parcel of one transaction only and were, in legal effect, and were so intended to be, a mortgage executed by Elston to secure the payment to Wood of a certain definite indebtedness.—*Borcherdt v. Favor*, 16 Colo. App. 410. And, contrary to defendant's contention, it makes no difference that the grantee in the lease was not the same as the grantor in the deed. As said in *Borcherdt v. Favor, supra;* "In law the defeasance must be in favor of the grantor in the deed. In equity the rule is different, and the transaction may be held a mortgage even though the defeasance be to one other than the grantor." It is well established that an instrument or instruments executed simply as security can not be converted into a conditional sale by the form of a conveyance to reconvey. If a transaction resolve itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in effect a mortgage.—*Flagg v. Mann*, 2 Sum. 486, 533, Fed. Cas. No. 4847.

4.—The defendant questions the sufficiency of the evidence to establish plaintiffs' case. He attacks it as to the existence of the indebtedness upon the Kansas City property, the mortgage upon the ranch and his knowledge thereof. These matters were found in favor of the plaintiffs, and if there is a fair *quantum* of admissible and proper evidence to support such conclusions we must presume them to be correct. The law in this regard is stated in *Davis v. Pursel*, 55 Colo. 287, 291, 292, 134 Pac. 107, 108, 109, as follows:

"In this character of cases an appellate tribunal may examine the evidence to ascertain if the trial court had the right conception of the law, if its conclusions are supported by the evidence, or are fair deductions therefrom; and, if upon the whole case, it is reasonably certain that the decree is palpably unwarranted, though it may be slightly supported by the evidence, it should, nevertheless, be set aside. On the other hand, however, if the decree is supported by the evidence, under a proper conception of the law, it should not be disturbed, though the reviewing tribunal might have, if passing upon the matter in the first instance, reached a different conclusion. * * *

In equity the judgment is essentially a deduction as to what is just and true from the facts and circumstances proven in each particular case. It is, therefore, a question for the trial court as to the convincing effect of the evidence. When that tribunal enters a decree, and there is a fair *quantum* of admissible and proper evidence to support its conclusions, we must presume that it was governed by proper rules of law, unless the contrary appears, and that its findings are correct. This applies as well to those questions in a case which must be established by clear and convincing proof, beyond a reasonable doubt, as to those which may be established by a mere preponderance of the evidence. The principle of testing the weight of the evidence is no different upon one matter than upon another. In most trials presumptions arise at every step which have their effect, and are conclusive, unless overcome by proper evidence sufficient for that purpose. However, in almost every case of this character certain matters depend upon the existence or non-existence of extrinsic facts and circumstances resting in parol testimony. The establishment of those facts and circumstances to the satisfaction of the trial court,

depend largely on the character of the witnesses, the consistency of their testimony and their manner and appearance on the witness stand. It is that court, not this, which must determine the credibility of the witnesses, pass upon the weight of their evidence and find the facts.''

Measuring the sufficiency of the evidence by these well established rules, we are not justified in disturbing the findings of fact embodied in the decree. There was sufficient evidence to show that Elston owned equities in certain Kansas City property and was hard pressed to meet his obligations in that regard; that Wood proffered to assist him in his distress and proposed, in accordance with what he claimed was his plan of loaning money, to have the property conveyed to him as security for the loan, by deed absolute in form, which he denominated a deed for a bond, with the agreement on his part that if Elston should keep the interest on the loan and the taxes on the property paid and discharged, when the indebtedness was satisfied he would reconvey the property to Elston. This was agreed to by Elston and the loans on the Kansas city property readjusted through deeds, absolute in form, to Wood, and leases from Wood to Elston, in the form of those used relative to the Hall ranch; that thereafter Wood, at the solicitation of Elston who desired to trade his Kansas City property for the ranch in question, consented to transfer the indebtedness he held upon the former property to the latter, and evidence the obligation of Elston to him and the character of security held therefor by deed and lease in the same manner they were accustomed to use in such transactions, and the deal was consummated by means of the deed and lease here under consideration. That such was the relation of the parties is not denied, and circumstances strongly corroborate it. Wood told Kahl, a dis-

interested witness, that it was Elston's property that
was traded for the ranch, and while he told her the ranch
was his, he also stated that he had given Elston a lease
and contract, and the ranch would be Elston's "free and
clear if he paid off this indebtedness" that Wood held
against it; that Elston owed him $11,000 on the ranch,
and that they had adopted that plan of security instead
of a mortgage, because the mortgage would be taxable
while under that plan it was not. Moreover, it was tes-
tified that the defendant frequently admitted before re-
ceiving the quitclaim deed to the ranch from Wood, that
it was his understanding that the consideration to Hall
for the ranch was a conveyance of Elston's property lo-
cated in Kansas City, and that Wood had told him that
he did not believe the ranch was worth the incumbrance.
Indeed, in defendant's own testimony he stated that El-
ston had the privilege until his lease ran out to "pay
the $11,000 and redeem it" (the ranch). The right of
redemption usually implies the existence of a mortgage
or pledge and was evidently so used by defendant.
Again, defendant told one Smith, a disinterested wit-
ness, in Trinidad, prior to the time of the deed from
Wood to him that Elston owed Wood and him about
$11,000 and wasn't doing any good with the ranch and
hadn't paid the interest nor the taxes. Though testify-
ing as a witness defendant in no wise denied these con-
versations and admissions. It was shown that defend-
ant said "he didn't think there was any equity in the
property over and above the mortgage," and that if El-
ston would only answer the letters which Wood wrote
him asking if he had kept the taxes paid and why he
didn't send the interest on the $11,000, Wood would be
easy with Elston, and let the matter stand and assist him
further. Defendant likewise informed Mrs. Elston, al-
most immediately after the death of Wood, that he

wanted her to know that she had the privilege which Elston always had of selling the ranch and getting the equity. And in a letter expressed his belief that no one could take the ranch with $11,000 on it and pay it out. That a mortgage existed on the ranch and Hawkins had full knowledge thereof is further evidenced by his uncontradicted conversations detailed in evidence and by his letter to Mrs. Elston wherein he declines, as he says, to show his hand until the full settlement of Wood's estate.

Notwithstanding the earnest criticism by defendant's counsel of the law as declared in *Davis v. Pursel, supra,* we are satisfied therewith and believe it perfectly consistent with the law as declared by other decisions of this court reviewed or cited therein, and claimed by counsel to be inconsistent therewith. It is quite true that where there is a deed absolute in form, either with or without a contemporaneous agreement for a re-sale of the property, there being nothing upon the face of the collateral papers to show a contrary intention, the presumption, in the first instance, independent of evidence, is, that the transaction is what it appears to be, and he who asserts that the writings constitute in fact a mortgage must show by clear and convincing evidence that such was the intention of the parties. In other words, the court, in the first instance, must presume that the writings speak the truth until the contrary is shown by clear, certain, unequivocal and trustworthy evidence such as to establish the fact beyond any substantial doubt. However, when a decree of the trial court establishes such fact the presumption, in the first instance, by the reviewing tribunal must be that the decree is correct. If upon consideration of all the evidence in the record the reviewing tribunal can say, within its judicial discretion, that the specific character and quality of evidence essential to transform a deed, absolute on its face, into a

mortgage, is lacking, the presumption in favor of the correctness of the decree of the trial court is overthrown and the presumption that the deed and writings express the true contract between the parties, is restored. This is the principle recognized and applied relative to sustaining or setting aside verdicts of conviction in criminal cases, and declared in *Davis v. Pursel, supra.* In a criminal case where there is a fair *quantum* of evidence, though it be conflicting, to warrant fairminded men to deduce therefrom the guilt of a defendant, a verdict of guilty therein will not be disturbed by a reviewing tribunal though, if passing upon the matter in the first instance, it might have reached a different conclusion. So in cases of the character here under consideration, as declared in *Davis v. Pursel, supra,* if upon the whole case it appears that the decree is palpably unwarranted, though it may be slightly supported by the evidence, it should be set aside. But, if the decree is supported by a fair *quantum* of the evidence, under a proper conception of the law, it should not be disturbed though the reviewing tribunal might have, if passing upon the matter in the first instance, reached a different conclusion. The facts underlying the verdict in the one case, or the decree in the other, under the conditions supposed, are established within the meaning of the law beyond a reasonable doubt.

5.—It was proper to permit the plaintiffs to amend their complaint and impress their equities upon the lands received by Hawkins in exchange for portions of the estate belonging to Elston, and to require defendant to account for the money received in the transaction. The latter, however, should be applied as a credit upon the mortgage indebtedness as of the date of its reception by defendant. Equity permits a beneficiary to follow the trust property into new investments and molds and ap-

plies its plastic remedies to meet the conditions in each case. As it can not restore the particular thing held in trust it compels defendant to restore that which stands in his hands in lieu thereof.

6. We approve the findings of the court in favor of the plaintiffs upon the material issues involved; and the judgment that plaintiffs are the owners in fee of the ranch in dispute, subject to whatever may be due by virtue of the Wood mortgage, is hereby affirmed, while that portion, adjudging the quit-claim deed from Wood to Hawkins null and void and of no effect, is disapproved. Clearly such deed constituted an assignment of the mortgage indebtedness held by Wood and invested in Hawkins the right in the premises to collect the debt previously held by Wood:. The fact, that the transaction was without consideration, coupled, if it were, with directions as to the disposition of the mortgage founds, when collected, in no wise affects the matter. If this were the only difficulty in the judgment we would correct it here and end the controversy. The truth is, however, that notwithstanding specific findings of fact in favor of plaintiffs, as well as a general finding, it is clear the court did not determine whether the facts alleged and proven, when tested by the law applicable thereto, constituted a gift to the plaintiffs by Wood of one-third of the mortgage indebtedness when collected. This is disclosed by the failure to find the amount due upon the mortgage, which of course would be substantially reduced by such gift if legally established. Without expressing an opinion upon the merits of the alleged gift, or the law applicable thereto, we reverse the judgment, except in so far as it is hereinbefore approved, with directions that the court determine the matter as to the alleged gifts, ascertain the amount due under the mortgage, and thereupon enter a decree vesting title in fee of the premises

in plaintiffs upon payment, within a reasonable time to be fixed by the court, of the sum so found due, with interest, from the date of entry. And, if the defendant is so advised, he may amend his pleadings and have judgment of foreclosure of the mortgage, and an order of sale of the premises to satisfy the same, unless plaintiffs redeem within the time prescribed. While it may be a general rule that the party seeking to redeem is charged with the cost of such proceeding, by far the greater portion of the costs in this case would not have accrued had it not been for the wrongful acts of the defendant in the premises. Therefore, we think it inequitable that either of the parties should recover costs of the other in either court, and it is so ordered. The decision in this case was originally by a Department of the Court, but at the earnest request of the defendant, embodied in his brief upon rehearing, the entire court has considered the case, modified the opinion slightly, and denied the petition for rehearing. The former opinion is, therefore, withdrawn, the judgment affirmed in part and reversed in part, as hereinbefore stated, and the cause remanded for further proceedings in accordance with the views herein expressed.

*Judgment affirmed in part and reversed in part.*

Decision *en banc.*

Decided October 4, A. D. 1914. Rehearing denied February 1, A. D. 1915.