## No. 8651.

### FULLER ET AL. *v.* STAPP ET AL.

1. FRAUD—*Representations Not Relied Upon,* afford no ground for the charge of fraud.

2. *Evidence.* Bill by purchaser of lands to cancel the contract of purchase. The contract was made in April. Evidence that in the prior January some of the purchasers visited the property, and upon their return declared that they were entirely satisfied with it, and were before the visit, that one of their

party had been there previously, was held competent to show that the purchasers did not rely on any representations of the vendors.

Evidence that during the negotiations for the purchase, one of the vendors demanded that one of the proposed purchasers should visit the property, saying he was unwilling to sell to one who had not seen it, was held competent, as tending to show good faith on the part of the particular vendor named, in the representations attributed to him.

Testimony that in March preceding the consummation of the contract for the purchase, one of the plaintiffs had stated that for six years he had been trying to get hold of the property, was held admissible, as tending to show that the purchasers relied rather upon the knowledge of this one of their number, than on the representations of the vendors.

3. APPEAL AND ERROR—*Finding Upon Conflicting Evidence*, and not contrary to the weight of evidence will not be disturbed.

*Error to Boulder District Court, Hon. H. P. Burke, Judge.*

Mr. V. H. MILLER and Mr. EDMUND J. CHURCHILL, for plaintiffs in error.

ALLEN, J.

Mr. JOHN E. FETZER, for defendants in error.

In April, 1910, the plaintiffs purchased from the defendants, Isaac S. Stapp and Mattie Stapp, certain lands and property situated in Boulder county and known as Stapp's Lakes, for a consideration agreed upon between the parties, a small portion of which was paid in cash, and the balance by notes and deeds of trust against the property securing the same. The plaintiffs took and continued in the possession of the property in pursuance of the purchase.

In January, 1911, the plaintiffs brought this action, asking for a rescission of the contract of purchase of the property mentioned, for the cancellation of the notes and deeds of trust executed, for damages in the amount of money already paid, for expenditures made in caring for the property, for exemplary damages, and for relief generally.

The suit was predicated upon alleged fraud and deceit on the part of defendants, the Stapps, whereby the plaintiffs were induced to enter into the contract of purchase. The principal alleged misrepresentations made by defendants relate to the size of each of the lakes involved in the purchase, the extent to which the lakes had been stocked with fish, and the number of fish contained in the lakes at the time the alleged misrepresentations were made. All the material allegations of the complaint in this respect were met by the answer of the defendants, which contained allegations to the effect that plaintiffs prior to the purchase of the property inspected and made careful examination of the same, and purchased the property in reliance on facts thus learned, and on information procured from persons other than defendants; that between April, 1910, and July, 1910, the plaintiffs, and each of them, repeatedly visited the property and prior to July 1, 1910, the actual condition of the property was well known to all plaintiffs; that on July 1, 1910, the defendant, Mattie Stapp, at the instance and request of plaintiffs, extended the time of payment of the note of $1,100 to August 1, 1910; that plaintiffs, with full knowledge of alleged fraud, and of the truth or falsity of all representations alleged against defendants, elected to affirm the sale, and without making claim against defendants, the plaintiffs and their grantees remained in possession and control of the property until August 1, 1910. The defendants denied that any fraud had been committed by them.

Upon trial to the court without a jury, the court made a finding "that there was no fraud perpetrated on these plaintiffs." Upon such finding a judgment was rendered against the plaintiffs and in favor of the defendants. The plaintiffs bring error.

The assignments of error, as counsel for plaintiffs in error state, may be grouped into four general subdivisions, the first referring to the admission and rejection of certain evidence; the second relating to the trial court's principal finding, and on which the judgment was based; and the third and fourth relating to findings incidentally made

by the trial court to the effect that plaintiffs were guilty of laches, and had waived their rights to the maintenance of this action.

There was sufficient competent evidence favorable to defendants to support the trial court's finding that no fraud was committed by defendants.

Todd, one of the plaintiffs, went to F. D. Parker, in Denver, about the latter part of November, 1909, and asked him "to look up a trout proposition." During the latter part of December 1909, the plaintiffs Todd and Tinker met the defendant Isaac S. Stapp in Parker's office. The Stapp property was discussed at that time.

The evidence is conflicting as to what representations were made by the defendants. The plaintiff Todd testified that Isaac S. Stapp, at the meeting in Parker's office in December, 1909, and later, when the deal was closed on January 10, 1910, represented one lake to contain "between forty and fifty acres, another about twenty-five acres, two about ten acres, and the smaller one about five acres." F. D. Parker, a witness for the plaintiffs, testified that Stapp's representations "were in conformity with the representations set forth in that first letter," referring to a letter of Stapp wherein the latter stated that one lake contained about thirty acres, one about twenty, and one about five. The plaintiff Todd testified that Stapp told him "he had two surveys of the lakes." Stapp denies this. Stapp also testified that he merely told Todd what he "called" the size of the lakes. He further says, "I told him I didn't know what it was, I never surveyed them."

Early in January, 1909, the plaintiffs Todd, Tinker and Fuller, made a visit to the lakes. The deal for the purchase of the property was not closed until after this visit to the lakes was made. The defendant Isaac S. Stapp testified that after the plaintiffs returned from the lakes, Todd said, "we are perfectly satisfied, we were satisfied before we came; we knew what was here before we come, some of our party have been here fishing." This testimony was not rebutted by plaintiffs. This was competent evidence on behalf of de-

fendants as tending to show that plaintiffs did not rely upon the defendants' representations as to the size of the lakes. 20 Cyc. 117, and n. 80.

Plaintiffs' own witness, F. D. Parker, when called by the defendants testified that Stapp demanded that Todd see the property, so as to be satisfied, and that Stapp said he was unwilling to sell the property to anybody without their seeing it first. This testimony related to the first conversation between the defendant Isaac S. Stapp and the plaintiff Todd, who began the negotiations on behalf of himself and the other plaintiffs. This evidence related to circumstances tending to show good faith on the part of the defendant, Isaac S. Stapp, at the time he made the representations.

The witness, Ruby Buck, on behalf of the defendants, testified that in March, 1910, the plaintiff Todd stated in her presence "that for the last six years he had been trying to get hold of Stapp's lakes." This evidence was not rebutted. This is another circumstance tending to prove that plaintiffs did not rely upon the defendants' representations but rather relied upon the knowledge that plaintiff Todd theretofore possessed concerning the property.

A surveyor testified on behalf of the plaintiffs that the large lake contained only 16.29 acres and the second lake had an area of only 6.8 acres. This testimony was not contradicted but this evidence goes no further than to prove the falsity of alleged representations.

The complaint alleges that the defendants represented that they "had stocked the lakes with 800,000 fish, mostly trout." It is not alleged that this representation was false otherwise than by the allegation "that there are very few fish in the large lake or second large lake, and none in the third." Stapp testified that he told plaintiffs how many fish he had put into the lakes. There is no evidence that his representations in this respect were false, except testimony tending to show the quantity of fish in the lakes at the time the alleged representations were made, and afterwards. Furthermore it does not appear that any particular reliance was placed upon this representation since the plaintiff Todd

testified that the plaintiffs "placed absolute reliance upon the representations of the Stapps with reference both to the acreage and presence of fish in abundant quantities" without stating that reliance was placed on representations with reference to previous stocking of the lakes with fish.

The evidence was conflicting as to whether or not the defendants represented that "the lakes contained large numbers of fish," as alleged in the complaint. Some of the witnesses for the plaintiffs testified that the defendant, Isaac S. Stapp, represented that the lakes "were thoroughly well stocked with three varieties of trout." Stapp testified that the plaintiff Todd asked him how many trout there were in the lakes and that he, Stapp, replied that he did not know, and had no way of knowing. Stapp further testified that he told Todd how many he had put in at different times. On such conflicting evidence the conclusions that the trial court arrived at should not be disturbed.

Stapp also testified that in June, 1910, which was after the purchase was made, he found that many fish had escaped from one of the lakes on account of the screens having been torn out of the flumes in the outlet.

The complaint also alleges false representations concerning the value of the property as a summer resort. It does not appear from the evidence that this representation was a material factor in inducing the plaintiff to make the purchase. The plaintiffs were interested particularly in "a trout proposition."

There was no erroneous theory adopted by the court below. The plaintiffs had selected their own theory of the case, and attempted to have their contract rescinded on the ground of alleged fraud. The alleged representations of the defendants, said by plaintiffs to have been false, were by the plaintiffs made the particular and only ground for the relief sought.

The trial judge, after having all the facts and circumstances pertaining to the whole transaction presented to him by both sides, observing for himself the character of the witnesses, the consistency of their testimony and their

manner and appearance on ,the witness stand, specially found, as a matter of fact, that no fraud had been committed. The judgment is supported by competent evidence. The finding that no fraud had been committed is not manifestly against the weight of the evidence, especially since the weight of evidence, as said in *Garver v. Garver,* 52 Colo. 227, 232, 121 Pac. 165, Ann. Cas. 1913D, 674, "does not necessarily mean a greater number of witnesses." Under these circumstances the conclusion and judgment of the trial court will be conclusively presumed to be correct and its judgment will not be disturbed. *Davis v. Pursel,* 55 Colo. 287, 291, 134 Pac. 107; *Halfelfinger v. Perry,* 52 Colo. 444, 447, 121 Pac. 1021; *Lambert v. Scott,* 53 Colo. 355, 357, 127 Pac. 142; *Springhetti v. Hahnewald,* 54 Colo. 383, 390, 131 Pac. 266; *Hawkins v. Elston,* 58 Colo. 400, 413, 146 Pac. 254.

The assignments of error which relate to matters other than the trial court's principal finding, hereinbefore considered, need not be considered, as they relate to alleged errors which could be prejudicial only in case the trial court had found, or manifestly ought to have found, that fraud had been committed.

For the reasons above mentioned, the judgment is affirmed.

*Affirmed.*

Decision *en banc.*