No. 15,433.

Robinson Brick Company *v.* Luthi.
(169 P. [2d] 171)

Decided April 29, 1946.

Messrs. BARTELS, BLOOD & BANCROFT, for plaintiff in error.

Mr. HORATIO S. RAMSEY, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

LUTHI sought and obtained an injunction against the Robinson Brick Company prohibiting the latter from making any further excavation or removal of soil or material from its premises. Luthi also was successful in obtaining a mandatory injunction requiring the brick company to refill the excavations already existing upon its premises within six months from the date of the decree. On his prayer for $10,000 damages, he was

awarded ten dollars. The brick company seeks a reversal of the judgment on writ of error.

The parties, to whom we will refer as they appeared in the trial court, are neighboring land owners in Arapahoe county, in a Denver suburban area east of the city limits, near the intersection of South Birch street and East Mississippi avenue.

Plaintiff, in the business of growing plants and flowers, maintains a large greenhouse on his acreage. After both plaintiff and defendant had acquired their properties for the respective purposes of horticulture and clay mining, the Board of Commissioners of Arapahoe county adopted a resolution, dated October 20, 1941, zoning the area in question under the County Planning Act (1939 Session Laws, chapter 92), hereinafter mentioned in more detail. Under this resolution the use of property within the designated zone for the purpose of clay mining was forbidden, but the proscribed uses already in existence were permitted to be continued under that portion of section 9 of the resolution, entitled "Non-conforming Uses," reading as follows: "The lawful use of land or buildings existing at the time of the passage of this resolution, although such use does not conform to the provisions hereof, may be continued. * * *" This provision of the resolution thus was in harmony with that portion of section 19 of the County Planning Act, hereinbefore mentioned, reading as follows: "The lawful use of a building or structure, or the lawful use of any land, as existing and lawful at the time of the adoption of a zoning resolution, or in the case of an amendment of a resolution, then at the time of such amendment, may, except as hereinafter provided [exception apparently not applicable here] be continued although such use does not conform with the provisions of such resolution or amendment."

The trial court's findings, dated April 24, 1943, superseding findings made March 20, 1943, included the following:

"4. That the defendant, despite known protests from the plaintiff and others, commenced and thereafter continued to excavate and remove clay and material therefrom, until now each excavation is about 12 to 13 feet in depth and upwards of 100 feet in diameter at the surface of the ground.

"5. That said excavating has been done with power shovels, tractors and trucks which create noise and dust offensive and disturbing to plaintiff and other residents of the neighborhood; that this is a suburban residence and garden farming community, located immediately east of the city limits of Denver; that farming, poultry raising, dairying and fertilizer grinding operations are carried on in the community, but that there are no enterprises in the community similar or comparable to that operated by defendant company.

"6. That such operations have damaged and will continue to damage adjoining and neighboring properties, and will render them of less value for dwellings and homes, and that the usability and salability of such properties will be impaired and the development of the community greatly retarded.

"7. That these excavations complained of will result in large and unsightly holes which will collect stagnant water, and will become dumping grounds for trash and refuse, and the burning of said trash and refuse will create unpleasant odors, dust and large amounts of smoke, and large areas surrounding these pits will become less usable and will remain undeveloped and the value of said property will be materially depreciated. That the plaintiff and others have substantial sums of money invested in their lands and the improvements thereon, and to permit the continued operation of these pits will deprive them of the full use of their properties and will cause such property owners great damage.

"8. That the large and deep excavations made by the defendant on its property described is a present nuisance, public and private, a nuisance in progress and a

continuing nuisance and should be abated; and that the evidence is ample to warrant the Court in enjoining the defendant from conducting further excavations on said land and requiring the defendant to refill the excavations now existing on both tracts of land by a mandatory injunction.

"9. That plaintiff is entitled to nominal damages of Ten ($10.00) Dollars."

The first of eight specifications of points upon which defendant relies for reversal of the judgment is: The trial court was unwarranted in "decreeing that the natural and lawful use, free from negligence, by the defendant below of its lands for the mining of clay is a nuisance and should be enjoined notwithstanding the provisions" of the County Planning Act and of the county planning resolution, under which continuance of clay mining existent at the time of passage of the resolution is expressly permitted. In support of its contention, defendant relies in part upon *Middlekamp v. Bessemer Irrigation Co.*, 46 Colo. 102, 103 Pac. 280; *Colorado Central R. R. Co. v. Mollandin*, 4 Colo. 154; *Suffolk G. M. & M. Co. v. San Miguel Cons. M. & M. Co.*, 9 Colo. App. 407, 48 Pac. 828; *Bove v. Donner-Hanna Coke Corp.*, 258 N.Y.S. 229; *Kasper v. Hood & Sons, Inc.*, 291 Mass. 24, 196 N.E. 149; 39 Am. Jur., pp. 329, 478, §§46, 203.

 Plaintiff, admitting that the operations conducted by defendant are not nuisances per se, forcefully maintains, nevertheless, that the County Planning Act and resolution do not bar him from proving defendant's operations are nuisances per accidens, i.e., nuisances in fact, and cites numerous cases, including *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365; 39 Am. Jur., pp. 481, 482, 479 and 483; *Squaw Island Co. v. City of Buffalo*, 284 N.Y.S. 598. The seeming irreconcilable conflict between the authorities cited by opposing counsel disappears to a large extent when note is taken of the fact that there are two kinds of nuisances, public and

private. The cases and texts under which there may be an allowance of damages arising from a nuisance, even where a zoning law or resolution legalizes the activities against which complaint has been made, appear to refer to a private, and not to a public, nuisance. 39 Am. Jur. 481.

 Where the legislative arm of the government has declared by statute and zoning resolution what activities may or may not be conducted in a prescribed zone, it has in effect declared what is or is not a public nuisance. What might have been a proper field for judicial action prior to such legislation becomes improper when the law-making branch of government has entered the field. None of the numerous cases cited appears to go so far as to approve the enjoining of a business operating under valid legislative zoning authority.

In the instant case, it will be noted that the trial court by its decree held that clay mining on the premises of the brick company was both a public and a private nuisance. The briefs which are before us, of which the trial court did not have the benefit, cite cases which distinguish a private from a public nuisance. We are of the opinion that the state of Colorado and the county of Arapahoe already have pre-empted the field of public nuisance as it relates to this case, not only for the reasons already mentioned, but also because of the provision in section 19 of the County Planning Act which reads in part: "The board of county commissioners may in any zoning resolution provide for the termination of non-conforming uses, either by specifying the period or periods in which non-conforming uses shall be required to cease, or by providing a formula or formulae whereby the compulsory termination of a non-conforming use may be so fixed as to allow for the recovery or amortization of the investment in the non-conformance." In the case before us the zoning resolution contains no provision for termination of a nonconforming use; but even if it had, the two methods suggested for so terminating

in the quoted statutory provision are much less harsh and are contrary in spirit to the prohibitory and manda-tory injunctions of the trial court which make no provision or allowance whatever whereby the defendant may recover his investment in his property.

It is evident that the two injunctions (prohibitory and mandatory) which were granted by the trial court cannot be justified on the ground that defendant's clay mining operations constituted a public nuisance. Neither do they have legal sanction if defendant's operations are deemed to be merely a private nuisance. They should both be revoked.

We then become concerned only with what actionable damage defendant has inflicted on plaintiff by reason of a private nuisance. It will be noted that the findings of the court deal mostly with the business of clay mining as it affects the neighborhood generally, and the general public. Although plaintiff estimated his actual damage to be "several thousand dollars," the trial court awarded nominal damages of ten dollars, and there is no cross-specification of error on this point. Plaintiff testified that the dust from defendant's operations spoiled his baby-breath plants growing in the open, as well as causing need for much more cleansing of plants and flowers within the greenhouse. Defendant answered by stating that dust blew on plaintiff's property from other properties and from the bordering streets which are unpaved. Invasion of a horticulturist's property by dust from mining operations on a neighbor's property might well cause damage, where the same amount of dust blowing upon the property of a neighbor engaged in the poultry business, farming, or manure grinding, would cause no damage.

We believe there was sufficient competent evidence to sustain the court's award of nominal damages in the amount of ten dollars, which is approved. We are of the opinion, however, that the court was not warranted in granting mandatory and prohibitory injunctions, and

that its orders relating thereto should be vacated. Accordingly, the cause is remanded with instructions to enter an amended judgment in accordance with the views herein expressed.

Mr. Justice Burke dissents.

Mr. Justice Alter not participating.