ROBERT W. WELTSHE & others *vs.* HENRY GRAF, JUNIOR,
& another.

Essex.     November 5, 1948. — December 7, 1948.

Present: QUA, C. J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Nuisance. Zoning.*

The fact that a particular kind of enterprise is permitted by a zoning
ordinance does not make it lawful to carry on the enterprise in such a
manner as to constitute a private nuisance, but that fact may be con-
sidered in determining whether or not there is such a nuisance.

Operation of a freight terminal of a general trucking business on land in
a city located at the boundary between a district zoned for business
and one zoned for residential use was a private nuisance because various
noises arising from loading and unloading trucks, sorting freight,
moving trucks, and voices at the terminal during the night were
"amply adequate to interfere . . . with the rest, comfort and sleep of
an ordinary person in ordinary health" and did so affect residents of
the neighborhood and persons at a nearby hotel; and the proprietor
of the business must be enjoined from loading and unloading trucks
and sorting freight at the terminal between eight o'clock in the evening
and seven o'clock in the morning.

BILL IN EQUITY, filed in the Superior Court on August 29,
1947.

The suit was heard on a master's report by *Brogna,* J.

*T. S. Herlihy,* for the plaintiffs.

*B. J. Lojko,* for the defendants.

RONAN, J.   The plaintiff Weltshe owns and operates a
hotel known as the Wolfe Tavern, which is located upon
the southwesterly corner of State and Harris streets in
Newburyport. With certain interruptions, this hotel has
been conducted since 1812, although since the last war it
has been operated only during the summer months of each
year. The other plaintiffs own property and live in the
neighborhood contiguous to the hotel. The defendants are
copartners engaged in the general trucking business, and
maintain a freight terminal on premises located on the
southerly side of Harris Street and abutting upon the rear

of the hotel premises.  The plaintiffs brought this bill in equity alleging that the operation of this freight terminal constituted a nuisance and sought an injunction.  A report of a master has been confirmed and a final decree entered dismissing the bill.  The appeal of the plaintiffs brings the suit here.

The business of the defendants, which began at the Harris Street location in 1943, has grown to substantial proportions.  They transport merchandise of any size and description all over New England, employing thirteen trucks, four of which are eight ton trucks of the tractor and trailer type.  The remaining trucks are of three to five tons capacity.  Their employees report for work at seven o'clock in the morning, taking out the delivery trucks which have been loaded during the preceding night and in the course of their work picking up other merchandise which is transported to the Harris Street terminal for sorting and subsequent delivery.  The employees of the defendants start work at the terminal between five in the afternoon and eight o'clock in the evening, unloading trucks, sorting the merchandise, and loading trucks for delivery to different localities the next day.  This work causes "sharp reports of colliding metal merchandise, the dull thud of heavy objects propelled to their consigned places, the rattle of chains and a variety of other sounds incidental to the wholesale handling in a condensed area of a multiple variety of merchandise." These sounds are accompanied by noises arising from the changing of the positions of the trucks, including the starting of the motors, the grinding of gears, the occasional backfire and the rasping sounds arising from the engaging and disengaging of the tractors from the trailers of the big trucks.  The voices of the men at work are also clearly audible above the noisy clamor.  The master found upon all the evidence that this confusion of sounds "assume[s] the character of a harmful and penetrating din amply adequate to interfere during the night with the rest, comfort and sleep of an ordinary person in ordinary health," and that all the plaintiffs except the two Roches have been so affected.  He further found that the volume of noise would not be reduced so as not to interfere with the rest and

comfort of the plaintiffs if greater care were used by the defendants' employees.

The conclusions of the master are based upon evidence which is not reported and also upon his subsidiary findings which do not appear to be inconsistent with his general findings, and we are bound to accept these general findings as true. *Morrison* v. *Morrison*, 320 Mass. 133, 134, 135, *Sawyer* v. *Shader*, 321 Mass. 725, 727.

The hotel and the freight terminal are located at the boundaries of a district zoned for business and adjoin a district zoned for residences in which all the plaintiffs have their homes. The fact that the operation of certain kinds. of commercial enterprises is permitted under a zoning ordinance is an important factor in determining whether the use being made of the land in conducting a particular enterprise goes beyond what is reasonable in view of the nature and character of the locality, the effect of the use upon those who live in the neighborhood, and the strength and force appropriately due to the various conflicting interests usually involved in the subject matter. But a zoning ordinance affords no protection to one who uses his land in such a manner as to constitute a private nuisance. *Marshall* v. *Holbrook*, 276 Mass. 341. *Beane* v. *H. K. Porter, Inc.* 280 Mass. 538.

The master's report plainly demonstrates that the defendants in their operation of the freight terminal at night in the manner found by him were making an unreasonable use of their premises and were maintaining a nuisance. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 490, 491. *Cumberland Corp.* v. *Metropoulos*, 241 Mass. 491, 502. *Nugent* v. *Melville Shoe Corp.* 280 Mass. 469, 472. *Beane* v. *H. K. Porter, Inc.* 280 Mass. 538, 541. *Godard* v. *Babson-Dow Manuf. Co.* 313 Mass. 280, 286, 287. The instant suit is distinguishable from *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, upon which the defendants chiefly rely, in that the character of the neighborhood here involved differs materially from the locus referred to in the case cited.

The final decree is reversed, and instead a decree is to be entered in favor of the plaintiffs enjoining the defendants

from loading and unloading trucks and sorting freight at their freight terminal on Harris Street between the hours of eight o'clock in the evening and seven o'clock in the morning. The plaintiffs are to have costs. *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206, 210. *Ferriter* v. *Herlihy,* 287 Mass. 138, 142. *Distasio* v. *Surrette Storage Battery Co.* 316 Mass. 133, 134, 135.

*So ordered.*