*Southern District*

## TREDWELL A. HARRISON, ET UX

v.

## TEXTRON INDUSTRIES, INC.

Argued: Dec. 9, 1969 - Decided: Mar. 6, 1970.

*Present:* Nash, C.J. Murphy, J.

Case tried to *Tamkin, J.,* in the District Court of East Norfolk, No. 48030

*(This opinion was drafted by Cox, J. before he retired on December 31, 1969).*

*Cox, J.* This is an action of tort. The plaintiff seeks to recover damages resulting from the use by the defendant of industrial access ways on both sides of the plaintiffs' property which is situated in a residence zone in the Town of Braintree. The use of the access ways is alleged to be a nuisance. The plaintiffs also claim counsel fees.

There was a finding for the defendant.

The case is reported for our determination because the plaintiffs claim to be aggrieved by the action taken by the justice on their requests for rulings of law and on the admission and exclusion of evidence.

The plaintiffs, husband and wife, own a single family house numbered 526 on the southerly side of West Street on a lot three quarters of an acre in area. The property is situated entirely within an area restricted by the Braintree Zoning By-Law to residential uses. The plaintiffs purchased this property for their house in June, 1963. They paid $30,900 for it.

When the plaintiffs purchased their home they knew that the land two hundred feet to the rear and parallel with West Street was zoned for industrial purposes. The strip of land two hundred feet wide lies between West Street and the industrial zone is zoned for residential use and extends from Granite Street to King Hill Road.

In January, 1964, Textron purchased the land to the rear and on both sides of the plaintiffs' property. Textron then proceeded to construct a large factory which was ready for manufacturing operations in September of the same year. Textron constructed two driveways from West Street *across the residential zone* to its plant in the rear of the plaintiffs' property. *One driveway was constructed on the West side and one on the East side of the plaintiffs' property. Each driveway was immediately adjacent to the plaintiffs' land.*

The driveway on the West side was roughed out in June, 1964 and surfaced during the first week of August. The driveway on the East side was roughed out in July, 1964 and surfaced early in August.

On or about December, 1964 the plaintiffs wrote the Building Inspector, who is charged with the duty of enforcing the zoning by-law, protesting the existence of the driveways. The Building Inspector took no action. The plaintiffs then brought a petition for a writ of mandamus against the Building Inspector in the Superior Court in February, 1965. The plaintiffs, petitioners, appealed to the Supreme Judicial Court from orders sustaining demurrers of the respondents. Textron was a respondent in that case. The case is reported as *Harrison* v. *Building Inspector of Braintree,* 350 Mass. 559. The Supreme Judicial Court reversed the order of the Superior Court sustaining the demurrers. The right of the Harrisons to bring the petition for a writ of mandamus was upheld. The court held (p. 561),

> "The use of land in a residential district, in which all aspects of industry are barred, for access roadways for an adjacent plant violates the residential requirement."

The court concluded (p. 563),

> "If the facts being established, it shall appear that relief is required, neither the writ of mandamus nor any order for compliance shall issue prior to June 30, 1966, to give an opportunity for orderly municipal action in respect of providing legal access to land in the industrial zone, if the town shall determine thereon."

Thereafter, at a special town meeting on May 25, 1966 the town amended the zoning by-law by adding the following permitted uses in Residence A and B districts:

"10. Access or egress ways, public or private, to or from land in any other district; subject to approval by the Board of Appeals, however, on such ways established after the adoption of this amendment."

The plaintiffs brought a petition in the Land Court to determine the validity of the foregoing amendment. G.L. c. 240, § 14A; c. 185, §1, (j 1/2). The Land Court on April 11, 1968 held the amendment to be invalid and illegal. The Town of Braintree appealed. That case is reported in *Harrison* v. *Braintree,* 355 Mass. 651. We quote from that case, in which Textron was not a party, at p. 608-609.

"The judge found that the use of the petitioners' [Harrisons'] residence had been adversely affected by noise, dust, lights and vibration, and that, although the petitioners' [Harrisons'] had spent about $11,500 to overcome these factors, they had not been fully able to do so and the value of their property was substantially diminished."

In the same case the opinion states,

"We rule moreover that the use for industrial access to the extent found by the judge of strips of residentially zoned land

on both sides of the petitioners' [Harrisons'] property is unreasonable as a matter of law.''

In the instant case there was evidence and findings of noise, dust, lights and vibration as there was found to be in the Land Court case. The justice made detailed special findings with reference to the use of the access ways which findings are supported by the evidence. The difficulty in the case arises from his conclusion. His decision was made before *Harrison* v. *Town of Braintree* was handed down holding the use of the two access ways to be unreasonable as a matter of law. It seems apparent that he was of the opinion that the use of the two access ways being authorized by the amendment to the zoning by-law was reasonable and consequently not a nuisance so far as the plaintiffs are concerned. His conclusion would no doubt have been justified by the evidence if only one access had been involved. But there were two access ways with the plaintiffs' property sandwiched in between.

We summarize the justice's findings. He found that from November, 1964 to November, 1966 the defendant operated with two shifts five days a week. The first shift was 7:00 a.m. to 3:00 p.m. The second shift was 3:00 p.m. to 11:45 p.m. In 1964 there were two hundred employees. In 1965 and 1966 there were a total of four hundred personnel of whom seventy-four were technical employees and thirty-six office

help who work one shift. About twenty times a year the two shifts worked half a day on Saturdays. From October, 1964 to November 14, 1966 there was overtime which delayed the departure of employees on the second shift until after 11:45 p.m. Other nighttime employment occurred infrequently and only when some problem arose at the plant. During the same two year period, the employers' parking lot held one hundred fifty cars during the day shift and about forty cars during the second shift. The lot for the office people held about forty cars.

Most shipping was done between 8:00 a.m. and 4:30 p.m. and some special shipments were made up to 6:00 p.m.

About fifty employees used a third access way, called the Parotti driveway, located about four hundred feet West of the plaintiffs' property. Customarily office personnel, technical employees and visitors used the access way to the East of the plaintiffs' home. Manufacturing personnel used the way to the West which was also used by the trucks. Approximately twenty-four common carrier trucks entered and left the plant daily. One small truck is operated by the defendant.

There were other detailed finding as to the effect of the lights from vehicles using the access ways which traversed the home of the plaintiffs and from the street lights in the area.

The justice found that the plaintiffs were annoyed by the beams of light from vehicles

using both access ways, as the light entered the interior of the plaintiffs' home and also were annoyed by the noise of the trucks on the West access ways, particularly, as gears were shifted on the grade which rose ten feet over a distance of one hundred twenty-five feet.

There were further detailed findings as to the effect of the noise and vibration to the plaintiffs' home from vehicles using the access ways in question. This is found to be more annoying to the plaintiffs during the summer months than during the winter months. The justice also found that the plaintiffs were annoyed by dust coming from the West access road in the summer and from the accumulation of sand spread on the ways in the winter to aid vehicles on the grade.

West Street, which is ''Old Route 128'' is a heavy truck road. Many trucks used in the enlarging of the Great Pond Water storage area and many trucks proceeding to the Randolph Industrial area use West Street in front of the plaintiffs' property. Since the relocation of Route 128, traffic on West Street has diminished but truck traffic is still very substantial.

The justice found that the plaintiffs have expended the following sums:

In May, 1965, for central air conditioning $3,350. To install air cleaning and humidifying equipment without air conditioning would cost $700 to $800. On July 16, 1964 for ten aluminum roll awnings, covering a portion of the rear

windows and doors, $695. For three hundred two feet of eight foot high cedar fence on July 7, 1964, $1,362. For shrubs and trees in October, 1964, $3,449, and in December of the same year, $2,050.

The justice also made special findings relative to the petition for mandamus when the building inspector failed to heed the plaintiffs' protest and makes reference to the decision of the Supreme Judicial Court in that case cited as *Harrison* v. *Building Inspector of Braintree*, 350 Mass. 559. Findings are made with reference to other means of access to the industrial area established by the town. Reference is also made by the justice to the Land Court case, which was still pending at the time of his decision, as already noted.

The justice observes that when the plaintiffs bought their home in 1963, a considerable change was taking place in the area because of the industrial development, which the town was promoting, thus changing the character of the town from one which was principally residential to a blending of residential and substantial industrial development. He found that the plaintiffs bought a home adjacent to an industrial area in which the defendant later built and operated its plant. He found that the plaintiffs were seriously disturbed and annoyed by the mere presence of the plant and the ugly view it afforded.

We quote the remaining portion of the decision:

"The court finds that the defendant's use of the Easterly and Westerly driveways has been entirely reasonable.

"The court finds that the only noise eminating (sic) from within the plant was a hum; that the noise heard and vibration of vehicles experienced on the driveways was normal driving during reasonable employment hours; that there was considerable noise and vibration from traffic on West Street at all hours; that the sand in the winter and the dust on the driveways during the summer was incidental, normal and reasonable to the use of the driveways; that there was considerable sand in the winter and dust during the summer on West Street; that the lights from the automobiles entering and leaving the driveways and the illuminating lights on the driveways were normal and reasonable; that there was considerable light from vehicles travelling on West Street during all hours of the night and considerable illumination from public lighting on West Street.

"The court finds that the defendant did not produce noise, dust, vibration and flashing of light as to be harmful to the health or comfort of ordinary people.

"The court finds that operation of the defendant's plant was not harmful to the reasonable comfort of the plaintiffs' property; that the activities of the defendant are not harmful to health or comfort of ordinary people residing in the residential district.

"The court finds that the defendant's use of its driveways was reasonable under all the circumstances and could not have injured persons of ordinary sensibilities.

"The court finds that the defendant's violation of the zoning ordinance is not decisive of the nuisance issue but is merely evidence to be considered with all other evidence.

"The court finds that the plaintiffs have failed to carry the burden of proving that the installation of air-conditioning was for the purpose of preventing dust from coming into the home from the driveways rather than for merely cooling the home in the summer; that the plaintiffs have failed to prove by a preponderance of evidence that the awnings were to prevent the entering of the light from the headlights of vehicles and illuminating lights rather than merely screening the ugly view of the plant; that the plaintiffs have failed to sustain the burden of proving that the cedar fence and the shrubs and trees were installed and planted to prevent the entering of the beams of light and softening the noise into the house rather than to shield the ugly view of the plant.

"The court finds the defendant's use of its driveways did not constitute a nuisance."

The plaintiff duly filed nineteen requests for rulings of law. Because of our view of the case, it is not necessary for us to discuss them further, except as hereinafter noted.

It is clear that the justice in allowing many

of the rulings requested by the plaintiffs considered them inapplicable by finding that there was no nuisance committed by the defendant in the use of the access ways or in the operation of its factory. As a consequence, he denied those rulings which related to damages, as not being in issue.

The law is clear that Textron is entitled to a reasonable use of its property. It is equally clear that such use should not result in noise, dust, lights and vibration which "materially interferes with the physical comfort of existence, not according to exceptionally refined, uncommon or luxurious habits of living, but according to the simple tastes and unaffected notions generally prevailing among plain people." *Stevens* v. *Rockport Granite Co.*, 216 Mass. 486, 489. *Weltshe* v. *Graf*, 323 Mass. 498. *Malm* v. *Dubrey*, 325 Mass. 63, 65.

Whether a nuisance exists is usually a question of fact to be determined from all the circumstances. *Flynn* v. *Seekonk*, 352 Mass. 71, 72. *Senatore* v. *Blinn*, 342 Mass. 778. And "The law of nuisance must often be found, as in the present case, in a compromise between the interests of business and those of quiet living." *Malm* v. *Dubrey*, 325 Mass. 63, 66-67.

"The fact that the operation of certain kinds of commercial enterprises is permitted under a zoning ordinance is an important factor in determining whether the use being made of the land in conducting a particular enterprise

goes beyond what is reasonable in view of the nature and character of the locality, the effect of the use upon those who live in the neighborhood, and the strength and force appropriately due to the various conflicting interests usually involved in the subject matter. But a zoning ordinance affords no protection to one who uses his land in such a manner as to constitute a private nuisance. *Marshall.* v. *Holbrook,* 276 Mass. 341. *Beane* v. *H. K. Porter, Inc.,* 280 Mass. 538.'' *Weltshe* v. *Graf,* 323 Mass. 498, 500.

In our opinion, the justice would have been warranted in finding that the use of the two access ways constituted a private nuisance, even before the decision in *Harrison* v. *Town of Braintree,* supra, which held ''the use for industrial access to the extent found by the judge of strips of residentially zoned land on both sides of the petitioners' [Harrisons'] property is unreasonable as a matter of law.''

Because of that decision, we reason that if the industrial use of the two access ways to the extent found by the Judge of the Land Court is unreasonable as a matter of law, and essentially the same evidence of their use was presented to the justice and found by him in the present case, then it follows irresistibly that such an unreasonable use imposed an unreasonable burden upon the Harrisons' home and the use thereof which fairly entitles them to compensatory damages.

Landowners in the position of Textron have

"frequently been held liable for non-negligent but unreasonable use of — premises which results in injuries to another." *United Elec. Lt. Co. v. The Deliso Construction Co., Inc.,* 315 Mass. 313, 320-321. Unreasonable use, which is usually a question of fact, has, in this case, been declared by the Supreme Judicial Court to be unreasonable as a matter of law. The plaintiffs are entitled to damages. *United Elec. Lt. Co. v. The Deliso Construction Co., Inc.,* 315 Mass. 313, 320-321. *Fenton v. Quaboag Country Club, Inc.,* 353 Mass. 534.

Allowing the plaintiffs' requests for rulings but finding that there was no unreasonable use of the access ways, by the defendant was, in the light of *Harrison v. Town of Braintree,* supra, prejudicial error because the unreasonable use of the access ways has been established as a matter of law.

As an element of damage the plaintiffs are entitled in this action to a determination of the amount of counsel fees incurred in prosecuting the mandamus proceedings and in the Land Court case. They are not entitled to such counsel fees in prosecuting this present action.

Counsel fees are not ordinarily collectable as an element of damage. "Taxable costs are deemed full compensation to the prevailing party for the expense of conducting litigation, even though in fact such costs do not cover his legal or other expenses." *Goldberg v. Curhan,* 332 Mass. 310, 311-312. *Chartrand v. Riley,* 354

Mass. 242. "The rule has its exception in the event of tortious conduct similar to that in this case requiring the victim of the tort to sue or defend against a third party in order to protect his rights." *M. F. Roach Co.* v. *Provincetown,* 355 Mass. 731. The plaintiffs were required to proceed by mandamus against the Building Inspector and again by petition in the Land Court against the Town of Braintree because of the defendant's unreasonable contruction and use of the two access ways. Both cases went to the Supreme Judicial Court. The decisions in both were favorable to the plaintiffs who had to resort to them in order to protect their rights against the tortious use of the ways by the defendant. We think the case comes within the exception relating to counsel fees in those two cases as an element of damage and that the amount may be determined in this action. *M. F. Roach Co.* v. *Town of Provincetown,* 355 Mass. 731.

Requests numbers 13 and 14 should have been allowed.

In view of our decision, it is unnecessary for us to discuss any of the justice's rulings on the admission or exclusion of evidence.

The finding for the defendant is to be *reversed. There is to be a new trial limited to the determination of damages.*

DOUGLAS A. RANDALL
of Quincy for the Plaintiff
WALTER E. GRAHAM
for the Defendant.