## No. C-97

## Arlene Hobbs v. M. P. Smith, Kenneth D. Johnson, Lester D. Galvin, and Donald G. Schrefler
(493 P.2d 1352)

Decided February 22, 1972.        Rehearings denied March 13, 1972.

300

[redacted]

Elias J. Candell, for petitioner.

Sonheim, Whitworth & Helm, Dale H. Helm, for respondents.

Evans, Peterson & Torbet, Paul Evans, for amicus curiae.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

We granted certiorari in this case to consider petitioner's argument that the decision of the Court of Appeals in *Hobbs v. Smith,* 29 Colo. App. 301, 484 P.2d 804 is contrary to the decision of this court in *Robinson Brick Co. v. Luthi,* 115 Colo. 106, 169 P.2d 171. The Court of Appeals affirmed a trial court judgment which granted an injunction prohibiting the continuation of circumstances which constituted a private nuisance. The petitioner interprets the *Robinson* case to stand for the proposition that when legislative authorities, by zoning ordinances, permit an act or a particular use of land, a court has no authority to enjoin a public or private nuisance naturally resulting therefrom. The Court of Appeals' opinion did not mention *Robinson.*

The transcript of testimony was not certified to either the Court of Appeals or to this court. Therefore, as stated by the Court of Appeals, the findings made by the trial court are binding upon this court. *Howard v. Lester,* 153 Colo. 199, 385 P.2d 121.

The trial court found that the petitioner kept one to two horses in the backyard of her home, which was located in a residential section of Jefferson County. A

Jefferson County Zoning Ordinance permitted the keeping of two horses on petitioner's property. The trial court found that petitioner was exercising all reasonable skill and care in maintaining the property where the animals were kept and that no health regulations were being violated. However, the trial court also found that flies were attracted to the general area by the horses and that noxious odors therefrom permeated the area. It was found that the respondents suffered a substantial interference with the use and enjoyment of their property which adjoined petitioner's property. The trial court ruled that while the keeping of horses did not violate the zoning ordinance, it did constitute a nuisance in fact (per accidens) and therefore, there was a proper basis for granting an injunction prohibiting the keeping of horses on the petitioner's property. It has been held that a lawful use may become a nuisance in fact or per accidens by reason of locality, surroundings, or other circumstances. *Robichaux v. Huppenbauer,* 258 La. 139, 245 So. 2d 385.

In its opinion, affirming the trial court's judgment, the Court of Appeals held that even though zoning regulations permit an act to be done, and the act is being done with reasonable care and skill, the courts may grant relief where it is found that the acts complained of constitute a nuisance per accidens, and that to hold otherwise would be to state that the legislative body may license a nuisance.

*Robinson Brick Co. v. Luthi, supra,* is anything but a model of judicial clarity. Whether the circumstances therein were primarily treated as a public or a private nuisance is difficult to determine. The nuisance complained of in that case was a clay mining operation which resulted in substantial amounts of dust being blown onto adjoining property including the plaintiff's. The plaintiff was engaged in the greenhouse business and the dust had damaged and was adversely affecting the growth of some plants. In *Robinson,* at the time the action was brought, the clay mine was a non-conforming use under the applicable zoning ordinance. The trial court issued an injunction prohibiting any further excavations and ordering that the existing excavation be

filled in. The plaintiff also received $10 in nominal damages.

On writ of error, this court in *Robinson* upheld the award of damages but reversed the trial court on the injunctions, stating:

"Where the legislative arm of the government has declared by statute and zoning resolution what activities may or may not be conducted in a prescribed zone, it has in effect declared what is or is not a public nuisance. What might have been a proper field for judicial action prior to such legislation becomes improper when the lawmaking branch of government has entered the field. None of the numerous cases cited appears to go so far as to approve the enjoining of a business operating under valid legislative zoning authority."

*Robinson* is a 1946 case. An examination of many more current cases in numerous jurisdictions reveals a contrary situation to that expressed in the last sentence of the above question. It is now the generally accepted rule that regardless of compliance with zoning ordinances or regulations, both business and residential uses may be enjoined if they constitute a nuisance to an adjoining property owner or resident. *See e.g., Williams v. Blue Bird Laundry Co.,* 85 Cal. App. 388, 259 P. 484; *Ferreira v. D'Asaro,* 152 So. 2d 736 (Fla. App.); *Camp v. Warrington,* 227 Ga. 674, 182 S.E.2d 419; *Valley Poultry Farms, Inc. v. Preece,* 406 S.W.2d 413; *Weltshe v. Graf,* 323 Mass. 498, 82 N.E.2d 795; *Urie v. Franconia Paper Co.,* 218 A.2d 360 (N.H.); *Kozesnik v. Montgomery Twp.,* 24 N.J. 154, 131 A.2d 1; and *St. Louis-S.F.R. Co. v. Matthews,* 174 Okla. 167, 49 P.2d 752.

*Robinson* has been construed to mean that in the situation where a lawful use constitutes a nuisance, the proper remedy is damages and not an injunction. 166 A.L.R. 655; *Colorado Bar Association, Environmental Law Handbook* ¶¶ 129.30 (1971). In 58 Am. Jur. 2d *Nuisances* § 230, the authors cite the *Robinson* case for just such a proposition and then state "According to the weight of authority, however, while what is authorized by law cannot be a public nuisance, it may nevertheless be a private nuisance, and the legislative authorization does not affect any claim of a private citizen for

damages for any special inconvenience and discomfort caused by the authorized act not experienced by the public at large, *or for an injunction.*" (Emphasis added.)

In our analysis, the holding in the *Robinson* case is far narrower than that ascribed to it by the above cited authorities.

The court in *Robinson* also stated

"In the instant case, it will be noted that the trial court by its decree held that clay mining on the premises of the brick company was both a public and a private nuisance. * * * We are of the opinion that the state of Colorado and the county of Arapahoe already have pre-empted the field of public nuisance as it relates to this case, not only for the reasons already mentioned, but also because of the provisions in section 19 of the County Planning Act which reads in part: 'The board of county commissioners may in any zoning resolution provide for the termination of non-conforming uses, either by specifying the period or periods in which non-conforming uses shall be required to cease, or by providing a formula or formulae whereby the compulsory termination of a non-conforming use may be so fixed as to allow for the recovery or amortization of the investment in the non-conformance.' In the case before us the zoning resolution contains no provision for termination of a non-confirming use; but even if it had, the two methods suggested for so terminating in the quoted statutory provision are much less harsh and are contrary in spirit to the prohibitory and mandatory injunctions of the trial court which make no provision or allowance whatever whereby the defendant may recover his investment in his property.

"It is evident that the two injunctions * * * which were granted by the trial court cannot be justified on the ground that the defendant's clay mining operations constituted a public nuisance. Neither do they have legal sanction if defendant's operations are deemed to be merely a private nuisance."

■ Our analysis of the statements and holding of the *Robinson* case causes us to believe that the theory of that

case rests on the often repeated rule of equity that where there is an adequate legal remedy, equity will not substitute an injunction for that legal remedy. It is our view that *Robinson* does, in effect, hold that where there is an adequate legal remedy which provides for the orderly termination of a non-conforming use, an injunction which is unduly harsh in its application will not be allowed to be used as a substitute for those legal means of phasing out the non-conforming use. The holding of the *Robinson* case should be so limited.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE KELLEY dissenting.

MR. JUSTICE DAY dissenting:

I respectfully dissent.

I hasten to add my fears that the precedent of the majority decision could curtail the effective gains which have been made in creating legislative awareness of good long-range land use planning. When the legislative authority has validly declared that a given activity is lawfully permitted in a particular zone, and the activity is lawfully conducted, to permit the courts to enjoin the use provides a judicial veto of proper, valid legislative functions.

Borrowing from the research evident in "The Effect of Land Use Legislation on the Common Law of Nuisance in Urban Areas," 36 *Dicta* 414, it would appear there is a split in authority on the question presented herein. Colorado is listed with New York, Oklahoma, Pennsylvania and California as states that would refuse injunctive relief against an authorized activity lawfully conducted, citing *Robinson Brick v. Luthi,* 115 Colo. 106, 169 P.2d 171. I believe that the re-examination of Robinson by the majority is straining somewhat to change the analysis given it in 166 A.L.R. 655, *Colorado Bar Association, Environmental Law Handbook* ¶ ¶ 129.30 (1971), and in 58 Am. Jur. 2d *Nuisances,* § § 230. I believe that the majority has overruled *Robinson,* and, in my opinion ill-advisedly.

I submit the better reasoned position to take is that land use regulations are best conceived by the legislative branch under its constitutional exercise of police power whereby there is afforded broad application for the public good. The court should not act to set aside or prevent that which the legislative branch has determined to be permitted. This will seriously affect long-range land use planning.

Such planning has salutory two-fold aspects. One provides for orderly growth; the other provides for the possibility of citizens finding a place in which to live and enjoy their own particular tastes. For the courts to step in and deprive these people of the kind of life they wish to live is a sort of anarchy where aid and comfort is given to others, who, because of their taste, seek to prevent on a case-by-case basis that which the legislature has declared can be enjoyed in a particular area. There have been conceived in many states equine country clubs for persons who enjoy horseback riding, jumping, polo, etc. In such developments citizens can build and live and indulge in their recreational hobby. People who do not have similar tastes should not and probably would not establish a home in such an environment. We take judicial notice of the fact that there have been wide-spread developments of housing along the fairways of some of the most prominent golf clubs in the United States. I think it is a fair statement to say that those who have established homes adjacent to such fairways run the risk of having a golf ball land on their patio and in their swimming pool, or even through their windows. Would a single homeowner be entitled to enjoin the playing of golf along the fairway which may be a part of the "back yard"? I think not.

"An aggrieved owner may not abate a legalized use of another's property. But it does not necessarily follow that the former is not entitled to recover compensation for any damage which he may be able to establish as resulting from that use." *Fairfax Oil Co. v. Bolinger* (Oklahoma) 97 P.2d 574.

I would reverse the trial court injunction.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY authorize me to state that they join in this dissent.