No. 25737

Laverne Green, W. Roy Green, Guy Burgess, Lorraine Burgess, Mabel Willie, Robert Andreason, Jane Andreason, Charles Gustafson, Jacqueline C. Gustafson, James L. Busey and Marion Busey v. Castle Concrete Company, a Colorado corporation

(509 P.2d 588)

Decided April 23, 1973. Rehearing denied May 21, 1973.

Bennett, Heinicke, Morrison & Holloway, Howard Morrison, for plaintiffs-appellees.

Evans, Peterson, Torbet & Briggs, Paul V. Evans, Dawson, Nagel, Sherman & Howard, Don H. Sherwood, Paul J. Schlauch, for defendant-appellant.

Phillip A. Kendall for amicus curiae Sierra Club.

Daniel P. Edwards for amicus curiae Springs Area Beautiful Association.

MR. JUSTICE DAY delivered the opinion of the Court.

In this appeal, certified to this Court by the Court of Appeals, Castle Concrete (Castle) seeks to have set aside a lower court permanent injunction by which its entire mining operation at Snyder Quarry in the Manitou Springs area will for all practical purposes be shut down. Notwithstanding that Castle was shown to be in full compliance with state statutes and zoning laws and that its operation was and is a use by right, the El Paso County district court found Castle's quarry to be a public and a private nuisance. At issue is whether the operation of a limestone quarry — a permissible activity by legislative zoning action — can by judicial decree be deemed a public nuisance. Also at issue is whether the evidence supports a finding and declaration of a private nuisance as to the particular plaintiffs. We hold the lower court judgment and injunctive decree erroneous and reverse.

Castle is a Colorado corporation which, for a number of years, has been engaged in limestone quarry activities in the vicinity of Colorado Springs. Since 1955 Castle has operated Queens Canyon, which lies north and west of Colorado

Springs. In order to provide itself with a continuing source of limestone, Castle began in 1969 to acquire property, including the Snyder quarry. According to the evidence, Castle had invested approximately one quarter of a million dollars in buying the land. In the spring of 1970, Castle began preparations for production at the Snyder quarry by improving a jeep road to provide access to the proposed operations. When suit was instituted, little if any of the quarry operations had been commenced.

Seven residents of the area — with homes over a mile east of the Castle Snyder quarry — instituted this action in the El Paso County district court seeking a preliminary and permanent injunction restraining Castle from any further quarry operations at the Snyder site. By order of court entered before trial, the asserted class action by the plaintiffs for and on behalf of all the citizens of the area was dismissed, and only the claim of the individual plaintiffs as to their respective property rights remained. Notwithstanding the limitation of the action, 13 days of trial and 5,000 folios of testimony were devoted to statements, generalized concepts and some expert opinion on ecology and environmental considerations. The court, in 29 pages of findings of fact and conclusions of law, devoted several pages also to the ecological effect of quarrying on the Front Range of the mountains. However, the court very specifically ruled that the testimony was irrelevant to and was not considered by the court on the issue of propriety of the injunction. Further confusion was added to the trial court's ruling on the public nuisance when the court stated it was taking judicial notice of the value of tourism to the region. The court made a specific finding as to the possible effect of the quarry on the tourist trade and speculated on the possible economic loss to the Manitou Springs and Garden of the Gods area. The court also found the public to be affected by the view of the Front Range from the eastern plains.

The Springs Area Beautiful Association and Sierra Club as amici curiae filed briefs after the trial. They did not intervene and were not parties to the action.

Defendant Castle argues here (I) that as a matter of law the trial court exceeded its authority in enjoining the operations as a public nuisance; and (II) that the evidence does not support the finding of a private nuisance.

Plaintiffs, as well as the amici curiae, argue several grounds for affirming the trial court. It is asserted that, although not generally a nuisance per se, open-pit quarry operations which create dust, air pollution, periodic blasting, and, most importantly, aesthetics harm are proper bases for abatement as a private and public nuisance.

## I.

Taking up first the question of the public nuisance, this court very recently discussed the law of public nuisance as pronounced in *Robinson Brick Co. v. Luthi,* 115 Colo. 106, 169 P.2d 171. *See Hobbs v. Smith,* 177 Colo. 299, 493 P.2d 1352, wherein the following was quoted from *Robinson Brick:*

" 'Where the legislative arm of the government has declared by statute and zoning resolution what activities may or may not be conducted in a prescribed zone, it has in effect declared what is or is not a *public nuisance.* What might have been a proper field for judicial action prior to such legislation becomes improper when the law-making branch of government has entered the field. None of the numerous cases cited appears to go so far as to approve the enjoining of a business operating under valid legislative zoning authority.' " (Emphasis added.)

This court then held that, notwithstanding such a ruling on public nuisance:

"* * * It is now the generally accepted rule that regardless of compliance with zoning ordinances or regulations, both business and residential uses may be enjoined *if they constitute a nuisance to an adjoining property owner or resident.* [Citations] " (Emphasis added.)

 *Hobbs* and *Board of County Commissioners v. Thompson,* 177 Colo. 277, 493 P.2d 1358, are authority for the proposition that, when the question of public nuisance versus publicly authorized activities forms the issue, the

courts will defer to the legislative branch of government with constitutional or other relevant limitations. Furthermore, in the most recent case of *Western Paving Construction Co. v. Board of County Commissioners,* 181 Colo. 77, 506 P.2d 1230, the court stated:

"In addition, when the matter is permitted by right in the zone created and either through an environmental concern or a change of circumstances the use is incompatible with prior usage, the proper procedure is to amend the zoning resolution. * * *"

## II.

■ An examination of the record on the propriety of a finding of a private nuisance reveals substantial infirmities and its failure to support the court's judgment. Comment (g) of the *Restatement, Torts* § 822, pointing up the requirement that there must be a "substantial invasion" to create a cause of action in nuisance, states:

"By substantial invasion is meant an invasion that involves more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable interference with the present usability of a person's land before he can have a cause of action under the rule here stated. * * *"

■ Additionally, a reading of the record convinces us that there is not sufficient substantial, competent evidence to support a finding of private nuisance. *See Ryan v. Pitkin Iron Corp.,* 444 F.2d 717; *Haskell v. Denver Tramway Co.,* 23 Colo. 60, 46 P. 121. The record is devoid of any proof that the quarry has been or *will in fact* be a nuisance. Speculation as to the future harmful effects of blasting and from dust pollution are not based on any actual occurrences other than a test blast. Other blasting complained of was in connection with building the road which would not reoccur. The defendant has not been given an opportunity to show that it can use methods which will remedy the anticipatory nuisance. Plaintiffs have fallen short of discharging the evidentiary burden necessary to entitle them to an injunction on any of the bases asserted. We have stated in other relevant

opinions that in such circumstances the trial court should be reversed. *See Mowry v. Jackson,* 140 Colo. 197, 343 P.2d 833; *Hawkins v. Elston,* 58 Colo. 400, 146 P. 254; *Davis v. Pursel,* 55 Colo. 287, 134 P. 107.

It should be noted that our decision is merely a holding that broad injunctive powers may not be used in advance to prohibit lawful business activity which may not be a nuisance. To do so would be unreasonably harsh on the defendant. Withholding of injunctive relief on the basis of the present status of operations preserves to the complaining party the right to enjoin the activity if it in fact proves to be a nuisance. *Haskell v. Denver Tramway Co., supra.* For example, in *Turner v. Spokane,* 39 Wash. 2d 332, 235 P.2d 300, an injunction was denied, as it was found that the testimony did not establish that there was such certainty and imminence of the apprehended annoyance and damage as would warrant injunctive relief. This was upheld on appeal, although it was recognized that an injunction might be proper in a later case upon a showing that after the quarry had been in operation it did in fact constitute a nuisance.

Thus, should future blasting, dust, or other considerations become a substantial interference, it would be on new grounds and a decision based on the present status would not be a bar to the plaintiffs or any other persons seeking injunctive relief.

It has been evident to county and state authorities for some years that quarry operations in at least two adjacent areas have been continuing and that large limestone formations abound in this area. Yet no move has been made by the legislature or county or city officials to rezone the area, set it aside for parks and recreation, or to compensate the owners for the taking. Solutions for problems of the magnitude anticipated here may suggest legislative and not judicial action.

We feel compelled to state that, although the goal of creating an aesthetically pleasing environment is clearly laudable, it is equally clear that where the accomplishment of this goal entails the restructuring of societal rights and

priorities it cannot be fairly or justly done through a judicially sanctioned private condemnation without compensation under the guise of abating a nuisance. In our populous society, the courts cannot be available to enjoin an activity solely because it causes some aesthetic discomfort or annoyance. Given our myriad and disparate tastes, life styles, mores, and attitudes, the availability of a judicial remedy for such complaints would cause inexorable confusion.

The judgment is reversed, and the cause is remanded with directions to vacate the injunction and dismiss the complaint.

MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur in the result.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE GROVES concurring in the result:

I concur in the result under the evidence in this case. I do not join in the proposition — if it is the ruling of the majority opinion — that under no circumstances can courts enjoin a legislatively permitted public nuisance.

MR. JUSTICE KELLEY joins in this concurrence.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent. The majority opinion today announces the rule that any activity operating under a valid legislative zoning authority can never be declared a public nuisance by the courts. I cannot agree. The welfare, the safety, and the health of the public, including its right to a decent environment, transcends, in my view, the right to engage in a zone permitted business, and where that business is so conducted as to detrimentally affect the public health, welfare, and safety, including the public's right to a decent environment, and thus become a danger to them, then it becomes a public nuisance subject to control by the courts.