**ART NEON CO. et al., Appellees,**

v.

**The CITY AND COUNTY OF DENVER, a municipal corporation, and Anthony H. Jansen, Appellants,**

**Gump Glass Co., Intervenor-Appellee.**

**No. 73-1404.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 17, 1973.

Decided Nov. 29, 1973.

Rehearing Denied Jan. 17, 1974.

Earl T. Thrasher, Denver, Colo. (Max P. Zall, and Robert M. Kelly, Denver, Colo., with him on the Brief), for appellants.

Alan A. Armour of Hoffman, Goldstein, Armour & Lonnquist, P. C., Denver, Colo., for appellees.

Davis, Graham & Stubbs, Denver, Colo., and Gibson, Dunn & Crutcher, Los Angeles, Cal., on the Brief for amicus curiae, Combined Communications Corp.

Before SETH and DOYLE, Circuit Judges, and TALBOT SMITH, District Judge *.

SETH, Circuit Judge.

The City and County of Denver, Colorado, and Anthony H. Jansen, the defendants, appeal from the judgment of the United States District Court, 357 F. Supp. 466 for the District of Colorado, which held that portions of the Denver Municipal Code relating to zoning, and more particularly to nonconforming signs, violate the Fifth Amendment of the United States Constitution. Enforcement of the provisions was enjoined. The action was commenced by Art Neon Co., other sign companies, and retail businesses seeking to have portions of the zoning ordinance declared invalid.

Denver is a municipal corporation organized as a "home rule" city, and defendant, Anthony H. Jansen, is the City Zoning Administrator charged with the enforcement of the zoning ordinances, of which Denver Rev.Mun.Code § 613 (1971), the "Permitted Signs" section with which we are here concerned, is a part.

Plaintiffs-appellees, Art Neon Co., Advance Neon Co., Gordon Neon Co., and Epcon, Inc. are engaged in fabricating, installing, repairing, leasing and selling neon, steel, and plastic signs and other advertising displays in Denver. Other appellees are owners or operators of businesses in Denver which lease and have had installed on their premises outdoor advertising signs from appellee sign companies and others. Two appellees own their own signs.

It is apparent from the foregoing that the appellees are connected in a variety

* Of the Eastern District of Michigan, sitting by designation.

of ways with outdoor advertising, and direct their attack on provisions for termination of nonconforming signs in the "Permitted Signs" section of Denver's Zoning Ordinance, Rev.Mun.Code § 613 (1971), and particularly sections 613.5–5(4) and .5(4)(a) thereof, which provide:

".5–4. Termination of Non-Conforming Signs.

\* \* \* \* \* \*

".5–5(4). By Amortization. The right to maintain a non-conforming sign shall terminate in accordance with the following schedule:

| Any sign which on the date the sign became non-conforming would cost the following amount to replace: | Shall be terminated within the following period after the sign became non-conforming: |
| --- | --- |
| $0 to $3,000 | 2 years |
| 3,001 to 6,000 | 3 years |
| 6,001 to 15,000 | 4 years |
| 15,001 or more | 5 years |

".5–5(4)(a). The right to maintain a flashing, blinking, fluctuating, animated or portable sign shall terminate within 30 days after such sign became non-conforming."

It appears that the effective date of the "Permitted Signs" section of Denver's Zoning Ordinance was March 19, 1971, and that thereafter the appellees' outdoor advertising signs became, in varying respects, "nonconforming." They commenced this suit asserting that the "Permitted Signs" section was in violation of various provisions of the United States Constitution, including Article I, § 10 (impairment of the obligation of contracts), Amendment V (deprivation of property without due process of law and taking of private property for public use without compensation), Amendment I (restriction on freedom of expression), and Amendment XIV, § 1 (deprivation of equal protection of the laws and of property without due process of law).

After considering whether to abstain from hearing the case, and instead to allow the courts of the state of Colorado to first pass on the claims presented, the district court decided to hear only one issue. This was:

"Whether the requirement that certain existing signs owned by plaintiffs be terminated over the periods prescribed by the ordinance is a valid exercise of the municipal police power or an unconstitutional taking of private property without compensation having been made therefor; or is an unconstitutional impairment of the obligation of certain contracts relating to the leasing of signs owned by plaintiffs." 357 F.Supp. at 467.

The district court, relying on United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, and Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68, declined to exercise pendent jurisdiction over the state law claims and held that these "myriad problems should be left for state court determination." 357 F.Supp. at 467. As to the issue above stated, the trial court held ". . . that the present Denver ordinance does not provide for the payment of just compensation." The court further ruled that the provisions relating to nonconforming signs were in violation of the Fifth Amendment and enjoined enforcement.

The zoning control sought to be exercised by Denver over signs is through a classification according to types which may be displayed in various zoning districts. Signs are not prohibited, but a close limitation is placed on the types permitted. The provision of the ordinance which is in issue is a part of a city wide zoning plan under which the typical property use controls are established. There is no doubt that a general zoning ordinance may be enacted by the City of Denver. Such ordinances are a proper exercise of the police power. Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; Gorieb v. Fox, 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228; Green v. Castle Concrete Co., 509 P.2d 588 (Colo.).

As to the scope of police power generally, the Court in Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, said:

" . . . An attempt to define [the police power's] reach or trace its outer limits is fruitless, for each case must turn on its own facts . . .

"Public safety, public health, morality, peace and quiet, law and order— these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs. Yet they merely illustrate the scope of the power and do not delimit it."

Zoning ordinances, including provisions relating to signs, are basically prospective in their application, and this aspect presents no serious problems today. However, there are usually nonconforming uses which present substantial problems. These uses are necessarily inconsistent with the purposes of zoning, Wasinger v. Miller, 154 Colo. 61, 388 P. 2d 250, and are not intended to be perpetual. Thus there usually comes a time when such exceptions are sought to be ended. These terminations are in further exercise of the police power, and are sought to be accomplished in several ways. See City of Los Angeles v. Gage, 127 Cal.App.2d 442, 274 P.2d 34.

The ordinance here requires that nonconforming signs must be removed or brought into conformance within a specified period of time after they become nonconforming. This is referred to as "amortization," but in reality it is no more than notice to the owner and user of the sign that they have a period of time to make whatever adjustments or other arrangements they can. This is probably not a proper use of the word "amortization," and so used it contains no connotation of compensation or a requirement therefor. This method is generally regarded as a proper exercise of the police power, although there are strong opinions to the contrary. Some of the more recent cases which have considered the issue include E. B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.); Mark-

ham Advertising Co. v. Washington, 73 Wash.2d 405, 439 P.2d 248.

■ The decision to terminate nonconforming uses, and the method to be used, is made by the appropriate legislative body. It is reached by a comparison or balancing of the burden or loss which will be placed on the individual by the ordinance with the public good sought to be achieved. See Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348; Board of Supervisors v. Miller, 170 N.W.2d 358 (Iowa). Such a legislative decision under the police power is prima facie a valid factual determination. The parties attacking such an ordinance have to meet a heavy burden. See Green v. Castle Concrete Co., 509 P. 2d 588 (Colo.), and Board of County Comm'rs v. Simmons, 494 P.2d 85 (Colo.).

■ ■ It is obvious that in the balancing process some loss or burden will fall on a sign owner or user. It is not required that the nonconforming property concerned have no value at the termination date. The plan need not be so constructed. The many and varied valid exercises of police power in other areas so demonstrate the impact on the individual. See Goldblatt v. Hempstead, 369 U. S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130; United States v. Central Eureka Mining Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed. 2d 1288; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348; Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205. The legislative determination must only meet the test of "reasonableness," that is, the plan for termination must be "reasonable." Standard Oil Co. v. Marysville, 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856; National Advertising Co. v. Monterey, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33 (Cal.). This is not a test of concept of "just compensation." The Court in United States v. Central Eureka Mining Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1288, said: "[T]he mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish

the owner's right to compensation." And further in Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568: "[W]here the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property."

In the application of the reasonableness test to the legislative determination, the courts have used a variety of factors, and combinations thereof. These include the nature of the nonconforming use, the character of the structure, the location, what part of the individual's total business is concerned, the time periods, salvage, depreciation for income tax purposes, and depreciation for other purposes, and the monopoly or advantage, if any, resulting from the fact that similar new structures are prohibited in the same area. Where signs are concerned, the courts usually also mention the fact that the use is also of public streets since the message is directed to the passerby.

■ When these factors are applied to the portion of the Denver ordinance here concerned, we must conclude that it is basically reasonable. The "amortization" method has been established by the authorities as a proper method to terminate nonconforming uses. It is clearly applicable to signs and is an aspect of the balancing of the public good against individual harm as part of the city's overall zoning plan and ordinance.

In this connection, the opinion in St. Louis Poster Advertising Co. v. St. Louis, 249 U.S. 269, 39 S.Ct. 274, 63 L. Ed. 599 is very significant. The ordinance there concerned regulated the size and location of billboards. Reliance was therein placed on Cusack Co. v. Chicago, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472, which dealt with an outright prohibition of billboards "in residence districts of a city," 242 U.S. at 530, 37 S.Ct. 190, 191, 61 L.Ed. 472, rather than a city wide regulation as in the case at bar. But the St. Louis case in permitting the full scope of the ordinance leads us to also hold that the Denver "Permitted Signs" ordinance, City and County of Denver, Rev.Mun.Code §§ 613.5-5(4) and 613.5-5(4)(a) (1971), is a valid, reasonable, nonarbitrary, and nondiscriminatory enactment under that city's police powers. It does not deprive the users of advertising signs, whether they be lessees or owners, of such use. It does not force the concerns which manufacture and supply such signs to terminate their businesses. It does, however, closely regulate the types of signs which may be used and, as we have held, this is proper.

■ There is, however, a portion of the ordinance which we cannot hold to be reasonable. This is the provision for different periods of amortization for signs having different "replacement" costs measured at the date they become nonconforming. The plaintiffs have attacked the validity of these categories. The replacement cost of the signs is not related to any of the relevant factors in the reasonableness tests, and presents no valid basis for different treatment of different signs ranging from three to five years. It has no bearing on the landowner's problem, nor on the sign owners' situation nor on the city's position. The most that can be said for replacement cost is that it could indicate, as of the date used, the size or complexity of a sign, but this is no real help. When the categories so constructed are removed, we are left with the five-year maximum period for removal of all nonconforming signs in the ordinance, and this period, as we have stated, is a valid one. The ordinance with the remaining five-year time limit is thus valid.

■ The ordinance contains a special category (.5-5(4)(a)) which states in part: "The right to maintain a flashing, blinking, fluctuating, animated, or portable sign shall terminate within 30 days after such sign became non-conforming." This we hold to also be a reasonable regulation. The balancing relates to such

signs in a somewhat different way in that the apparent movement created by the sign can be stopped and the signs brought into conformity without destroying entirely the usefulness of the sign. Certainly its effectiveness is much diminished, and its value reduced, but when this is compared to the extreme character of these signs, with the demonstrated relationship to safety, we must hold the method and the time to be reasonable.

■ The matter of preemption by the Federal Highway Beautification Act, 23 U.S.C. § 131, or by the Colorado Highway Sign Act, Colo.Rev.Stat.1971, Perm.Supp. § 120–5–28, has been argued by the parties, but we find no such preemption. Nor do we find therein any example or standard binding in any way on the city.

The parties have also discussed the case of Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1, as it relates to improvements on leaseholds. The Court in its opinion states the issue therein decided concerns valuations in eminent domain proceedings. The case is very significant in that field, but in our view of the legal concepts here involved, it is not helpful.

■ On the impairment of contracts issue urged by the plaintiffs, the question is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413. As the opinion of the Court pointed out in the same case:

"... [W]here the protective power of the state is exercised in a manner otherwise appropriate in the regulation of a business it is no objection that the performance of existing contracts may be frustrated by the prohibition of injurious practices.

.   .   .   .   .   . .

"In all such cases the question becomes, therefore, one of reasonableness, and of that the legislature is primarily the judge."

We have already held that the ordinance is a reasonable one in other aspects, and it does not, under Article I, § 10, cl. 1 of the United States Constitution, impair the obligation of contracts.

■ Much has been written about the distinctions between governmental acts which are within the police power and those which are within just compensation requirements under eminent domain. It will not serve any useful purpose to add to the literature on the subject. Like so many subjects, it makes some difference where you start into the problem or where you get hold of it initially. The section here challenged is part of the city's zoning ordinance, and is part of the aim or purpose of zoning. It is not much different from the provisions prohibiting changes in nonconforming structures, or prohibitions against use if once discontinued, and similar limitations on the use of property. These prohibitions are also an established part of zoning and generally upheld. Zoning from its inception has been grounded as a legislative function on the police power, and has been so sustained by the courts. The particular issue before us of elimination of nonconforming uses is well within an overall zoning plan which is not challenged, and the legislative body has decided it is an essential part thereof. It is of general application under a plan adjusted to different conditions in each zone, and not directed to particular tracts or signs. It is a bona fide use restriction. The challenged provision does not prohibit the use of signs, but requires conformance to specified types in specified places. Further in view of the traditional place where such regulations are found, the fact this subject is an integral part of zoning to accomplish its legitimate purposes, and the broad nature of its application leads us to place the issue in the police power category and not in eminent domain as the trial court apparently did.

The judgment of the trial court is reversed, and the case is remanded for further proceedings in accordance with this opinion.